Dominic A. VON FELDT and Inland Oil Company, a Kansas Corporation, Appellants,

v.

UNITED STATES of America, Appellee.

Howard D. MITCHELL, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 19161, 19162.

United States Court of Appeals Eighth Circuit.

Feb. 11, 1969.

Rehearing Denied in No. 19162 March 6, 1969.

John R. Doyle, Lincoln, Neb., and Jack L. Freeman, Oklahoma City, Okl., for appellants.

Theodore L. Richling, U. S. Atty., Omaha, Neb., for appellee; Donald N. Malawsky, Thad H. Turk and Robert H. Davenport, for Securities and Exchange Commission, Denver, Colo., on the brief.

Before MATTHES, GIBSON and LAY, Circuit Judges.

MATTHES, Circuit Judge.

A nine count indictment filed December 10, 1964, in the United States District Court for the District of Nebraska alleged that the appellants and one Roy E. Crist had violated 15 U.S.C. § 77q(a) of the Securities Exchange Act of 1933; 18 U.S.C. §§ 1341, 2314 and 371.[1]

Defendant Crist, who had originally pled not guilty, withdrew that plea on February 11, 1965, and on the same day entered a plea of guilty to all counts. The appellants were found guilty on all counts except appellant Mitchell, whose motion for a judgment of acquittal was granted as to Count VIII. From the judgments of conviction duly entered on the jury verdicts appellants have appealed.

There is no controversy over the sufficiency of the evidence to sustain the convictions of Von Feldt and Inland Oil Company. However, Mitchell does claim that a submissible case was not made against him and that his motion for a judgment of acquittal on all counts should have been granted. We deal with this question below.

In general, Counts I through VII of the indictment alleged and the evidence, viewed in the light most favorable to the verdicts, established that the ap-

---

1. 15 U.S.C. § 77q(a) provides it shall be unlawful for any person to use the mails in furtherance of any scheme to defraud in the sale of securities. Counts I and II alleged all of the defendants violated this section of the Act. 18 U.S.C. § 1341 is popularly referred to as the Mail Fraud Act. Counts III through VII charged all of the defendants violated this law. 18 U.S.C. § 2314 makes it unlawful to transport in interstate commerce certain enumerated property, including securities, knowing the same to have been stolen, converted or taken by fraud. Count VIII charged all defendants with violating this law. 18 U.S.C. § 371 is the conspiracy statute. Count IX alleged all of the defendants entered into a conspiracy to commit the unlawful acts alleged in the substantive counts.

pellants and Crist devised a fraudulent scheme or artifice to offer and sell securities, namely, investment contracts evidenced by oil and gas leases and assignments of oil and gas leases, agreements and promises on land owned by the United States Government in Rio Arriba County, New Mexico. On or about January 1, 1962, and continuing thereafter, the defendants carried out their fraudulent scheme by soliciting members of the investing public and offered and actually sold to them such investment contracts. The defendants exhibited magazine articles, maps, pictures, reports and made misrepresentations, all designed to prove the excellent oil and gas prospects on the federally-owned land. As a part of the scheme, appellants and Crist falsely represented to the investors that the Government charged $5 per acre for the oil and gas leases, plus a $10 filing fee for each lease, and in consideration for assigning the leases to appellants and Crist they would pay the investors $10 an acre and in some cases as much as $20 per acre. Additionally, the investors were to retain an overriding or royalty interest in the leases ranging from one per-cent to five per-cent. Appellants and Crist, after obtaining money from investors, caused the Bureau of Land Management, Department of the Interior at Santa Fe, New Mexico, to issue oil and gas leases, and assignments of leases previously obtained by defendants, to investors. The cost to the defendants was $.50 per acre, instead of $5 per acre as represented, plus the $10 filing fee.

After the investors entered into the investment contracts, they were contacted by appellant Mitchell. He purported to be not directly involved in the offer and sale of the investment contracts. He falsely represented that he was employed by "Standard Oil Company of Venezuela," and that this company was offering to buy the investors' leases and assignments of leases at a price far in excess of the amount the investors had paid for the leases and assignments. Mitchell's representations were designed to further lull the investors into a false sense of security and to deceive them into believing that the leases and assignments of leases were valuable assets.

Appellants and Crist failed to comply with their agreement and refused to purchase the assignments and leases from the investors.

The scheme proved fruitful for appellants and Crist and detrimental to the investors. A number of contracts were sold to residents of Nebraska. The amount obtained from such investors exceeded $27,800 and it was converted by the appellants to their own use.

The evidence is conclusive and uncontroverted that the mails were used for the purpose of carrying out the fraudulent scheme. Neither do Von Feldt and Inland assail the evidence relating to the interstate transportation of a cashier's check drawn on the Omaha National Bank in the amount of $12,800, payable to defendant Crist and which was obtained in connection with the fraudulent scheme. As stated in footnote 1 *supra,* this transaction is the subject of Count VIII of the indictment. There is also substantial evidence to support the jury's finding that the appellants and Crist entered into a conspiracy for the purpose of effectuating the fraudulent scheme and the sale of the investment contracts.

Although appellants present several contentions of error, it is apparent from their brief that the principal point relied upon relates to the lapse of time between the filing of the indictment on December 10, 1964, and the date of trial, May 1, 1967. On the eve of the trial, April 28, 1967, all three appellants filed a motion to dismiss the indictment on the ground that they had been denied their Sixth Amendment right to a speedy trial.[2]

2. The Sixth Amendment provides:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, * * *"

Judge Van Pelt held a plenary hearing on the motion, apparently for the purpose of affording appellants an opportunity to show that they had been prejudiced by the delay. The motions to dismiss were denied and the case proceeded to trial. Appellants now assert the court erred in not granting their motion. They argue, in effect, that the period of time between indictment and trial was of such duration as to establish a per se denial of a speedy trial, requiring a dismissal of the action. For reasons stated *infra,* we disagree.

From the cases which have considered similar contentions there have evolved certain principles which have relevance here.

In the early case of Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905), the Supreme Court in considering a claimed violation of the Sixth Amendment announced "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

This principle has retained its vitality throughout the years. In United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), the Supreme Court reversed the United States district court's dismissal of an indictment where there was a delay of 19 months between the original arrests and the hearings on the indictments. Mr. Justice White, for the Court, recognized the practical considerations attending the question by observing:

"This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'the right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S. Ct. 991, 997, 3 L.Ed.2d 1041." Id. at 120, 86 S.Ct. at 776.

Thus, it is clear that there is no specific standard for measuring the maximum period of time that automatically requires application of the Sixth Amendment and dismissal of the indictment. Time is certainly an important factor, but there are other elements to be considered. These include the reasons for the delay, the diligence of the prosecutor, court and defense counsel, and the reasonable possibility that the defendant has been prejudiced by the delay. Dockery v. United States, 393 F.2d 352, 353 (D.C.Cir. 1968); Hedgepeth v. United States, 125 U.S.App.D.C. 19, 365 F.2d 952, 954 (1966); Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684, 687 (1966). Pertinent to the question of the diligence required of the defendant, the courts have ruled with consistency that where, as here, the defendants are at liberty on bond and are represented by counsel, a demand for a speedy trial should be made by the defendants and that failure to make such a demand will constitute a waiver. United States v. Della Rocca, 388 F.2d 525,

527 (2d Cir. 1968), vacated on other grounds, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 274 (1968); United States v. Maxwell, 383 F.2d 437, 441 (2d Cir. 1967), cert. denied, 389 U.S. 1057, 88 S. Ct. 809, 19 L.Ed.2d 856 (1968); Fleming v. United States, 378 F.2d 502, 504 (1st Cir. 1967);[3] Mathies v. United States, 126 U.S.App.D.C. 98, 374 F.2d 312, 314 at n. 1 (1967).

We turn now to consideration of the circumstances relevant to the Sixth Amendment issue. After the filing of the indictment on December 10, 1964, appellants Mitchell and Von Feldt were arrested on December 17 and December 30, respectively. Mitchell was released on bond on December 18 and Von Feldt on the same day of his arrest. All of the defendants, represented by counsel, were arraigned on March 19, 1965, and entered pleas of not guilty. On the same day the court granted them until April 1, 1965, to file pleadings attacking the indictment. On March 30, Von Feldt and Inland Oil Company filed a motion for a bill of particulars. On April 9, 1965, defendants Crist, Von Feldt and Inland Oil Company filed motions to dismiss the indictment. Von Feldt and Inland also filed motions to strike certain paragraphs of the indictment. Mitchell did not file any motions.

The various motions were heard by Judge Van Pelt on July 23, 1965. Appellant Mitchell did not appear in person or by attorney. At that time the court granted the government and the defendants who were present time to submit authorities. On August 9, 1965, the Government was granted ten days additional time to file a brief in opposition to the motions. On October 11, 1965, Judge Van Pelt entered an order denying all of the motions.

We have alluded to defendant Crist's withdrawal of his plea of not guilty and

entry of a plea of guilty on February 11, 1965. The record does not disclose whether appellants Von Feldt and Mitchell were present, but we are informed by the Government's brief that they were not. In any event, the appellants claim no prejudice from what occurred on February 11.

By order of April 7, 1967, the case was set for trial on May 1, 1967. On April 28, appellants for the first time raised the issue of delay in bringing the case to trial, by motions to dismiss. As we have stated, the court, after permitting the appellants to offer evidence to substantiate their claim of prejudice, denied the motions.

We also glean from the record that in 1966, Von Feldt and Inland Oil were represented by attorney John Powers, and that this attorney had requested the court to delay the trial because he had undergone major surgery. The record fails, however, to reveal the length of time involved because of the inability of Mr. Powers to participate in trial work. Later, Powers withdrew from the case and present counsel entered his appearance after the court had entered the order setting the case for trial. The minutes of the clerk of the district court are silent as to the whereabouts of appellant Mitchell from the time of the arraignment to the day of the hearing on the motion to dismiss, however, it appears from Mitchell's affidavit filed in support of the motion that he was represented by an attorney of Oklahoma City, Oklahoma, after the arraignment and during the pendency of the proceeding. It is evident that all of the appellants were satisfied with the delay in bringing the case to trial.

We have considered appellants' claim of actual prejudice resulting from the delay. This phase of the motion to dismiss was fully explored in the hearing

3. The *Fleming* court stated:
  "Where, as here, defendants are not incarcerated frequently they prefer delay rather than a prompt trial. It is well settled that failure to seasonably demand a speedy trial is deemed a waiver of the right. (Citing case). This is particularly true when the motion to dismiss for lack of a speedy trial is not made until the very day of the trial itself. (Citing cases)."

before Judge Van Pelt. He was not persuaded and neither are we that the appellants' evidence established that they were in fact prejudiced because of the failure to accord them a trial at an earlier date.

Neither are we impressed with the suggestion in appellants' brief that the court should have dismissed the indictment because of the lapse of time from the inception of the investigation to the date of the filing of the indictment.[4]

■ It stands uncontradicted that the Securities Exchange Commission issued its order to investigate the actions of the appellants in April, 1963. Because of the nature of the transactions, the investigations involved seven different states. The Government agents worked continuously in their investigation. The information obtained and assembled was delivered to the United States Attorney's office for the District of Nebraska in April of 1964. The grand jury was not in session between April 20 and December, 1964. The United States Attorney promptly presented the matter to the grand jury on December 7, 8 and 10. On the basis of the foregoing undisputed facts, it is abundantly clear that there is no rational basis for contending that there was an unnecessary delay in presenting the evidence to the grand jury. See Foley v. United States, 290 F.2d 562, 565 (8th Cir.), cert. denied, 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88 (1961).

In summary, we are of the firm opinion that the delay between October 11, 1965, when the various motions were disposed of, and April 7, 1967, when the case was set for trial, was not so inordinate as to constitute a per se violation of the appellants' right to a speedy trial. Aside from the lapse of approximately sixteen months in time there is not a single circumstance to support appellants' claim. The delay was tacitly encouraged by appellants; there is no proof of actual

prejudice, and in the language of Judge Burger:

"This is not a case where prejudice may be spelled out from restraint on liberty for an unreasonable period of time before trial. Petition of Provoo, 17 F.R.D. 183 (D.Md.), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L. Ed. 761 (1955). Nor is the length of time involved such as to show that the delay was 'arbitrary, purposeful, oppressive, or vexatious,' * * *" Mathies v. United States, *supra* 374 F.2d at 315.

Over the objections of appellants, the court permitted Salvas Nicholas of Champaign, Illinois, to testify in regard to a transaction he had with appellants Von Feldt and Mitchell. The contention is now advanced that the Nicholas transaction was foreign to the indictment, was not encompassed within the charges for which the appellants were tried, and that consequently the testimony was hearsay and prejudicial. Appellants also attempt to invoke the well-settled rule that generally it is error to admit evidence of the commission of an offense other than the one with which the accused is charged. We hold that in view of the nature of the charges against appellants the court properly admitted the testimony.

Nicholas testified in substance that Von Feldt contacted him two or three times in September, 1962, in regard to oil and gas leases; that in January, 1963, Von Feldt and Mitchell visited him in Champaign, Illinois, and offered to sell him leases on 1,300 or 1,400 acres of land in Rio Arriba County, New Mexico. Eventually, Von Feldt induced Nicholas to purchase a one-half interest in certain leases for which Nicholas paid Von Feldt $2,100. At the time of this transaction Von Feldt and Mitchell represented that Mitchell would, at a later date, purchase the leases and the profit would be split between Von Feldt and Nicholas.

---

4. Appellants rely in part upon Rule 48(b) of the Federal Rules of Criminal Procedure, which provides in pertinent part that if there is unnecessary delay in presenting the charge to a grand jury or in filing an information against defendant the court may dismiss the indictment.

The representations made for the purpose of inducing Nicholas to invest in the leases proved to be false. Neither Von Feldt nor Mitchell purchased the leases and Nicholas derived nothing from his investment.

The question presented is neither new nor novel. The courts have ruled consistently that where intent and knowledge are essential elements of an offense, evidence of other acts similar in nature and closely related in time to those encompassed in the charge is admissible to establish intent and guilty knowledge. Koolish v. United States, 340 F.2d 513 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965); Moses v. United States, 297 F.2d 621 (8th Cir. 1961); King v. United States, 144 F.2d 729 (8th Cir. 1944), cert. denied, 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945); Harper v. United States, 143 F.2d 795 (8th Cir. 1944); Brickey v. United States, 123 F.2d 341 (8th Cir. 1941).

We have studied the record and are convinced that the evidence complained of was clearly admissible. It was germane to the charges alleged in the indictment and had a definite bearing upon the question of intent.

This brings us to the contention that the evidence was insufficient to warrant submission to the jury of the question of Mitchell's participation in the conspiracy. The argument is advanced that there was no evidence to connect him with the conspiracy. Additionally, the claim is made that the conspiracy had terminated before Mitchell entered the picture.

The law is well settled that where, as here, the defendant is convicted of more than one count and concurrent sentences are imposed, the judgment must be upheld if the conviction upon any of the counts is sustainable. Barenblatt v. United States, 360 U.S. 109, 115, 79 S. Ct. 1081, 3 L.Ed.2d 1115 (1959); Lawn v. United States, 355 U.S. 339, 362, 78 S. Ct. 311, 2 L.Ed.2d 321 (1958); Clark v. United States, 391 F.2d 57, 59 (8th Cir.), cert. denied, 393 U.S. 873, 89 S.Ct. 165, 21 L.Ed.2d 143 (1968). Mitchell was convicted upon seven substantive counts, in addition to the conspiracy count.

We detect from the argument in appellants' brief an underlying attack upon the sufficiency of the evidence to support any of the charges. Focusing our attention on this broad challenge, we have examined the record, and have determined there is substantial evidence to support the conviction on all counts. The jury was warranted in finding that Mitchell was a moving force in the fraudulent scheme. Although he was not in the forefront when the investors were initially contacted, he made an appearance at the appropriate time for the designed purpose of lulling the investors into a false sense of security. His role in the scheme was effective in the perpetration of the fraudulent plan.

There is also a mild suggestion that the court failed to properly instruct the jury on circumstantial evidence. Again, we disagree. The court's charge was comprehensive. Every essential element of each charge was submitted. The court carefully instructed on the standards for reasonable doubt in accordance with the teachings of Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L. Ed. 150 (1954).

We conclude by observing that appellants were afforded a fair trial. The evidence of guilt is convincing. The judgments must be and are affirmed.