UNITED STATES of America,
Plaintiff-Appellee,

v.

James Ernest JAQUA, Defendant-
Appellant.

No. 72-3620

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 30, 1973.

Victor Arditti, John H. Whitaker, El Paso, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Edward Marquez, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

James Ernest Jaqua was convicted of resisting, assaulting, opposing, impeding, and interfering with an officer of the United States Border Patrol, while that officer was engaged in the performance of his official duties, in violation of 18 U.S.C. § 111. Various issues are presented on appeal, three of which constitute prejudicial error.[1] We reverse because the district court erred in allowing the Government to present inadmissible evidence of (1) prior criminal activities, (2) inculpatory statements of appellant elicited in violation of his rights under Miranda,[2] and (3) inflammatory remarks in the Government's argument to the jury.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

1. Appellant also asserts as error lack of probable cause for his arrest and detention, delay in being brought before a Federal Magistrate, failure of the court to grant his motion for acquittal, refusal of the court to give certain instructions. We find no merit to these contentions.

2. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On August 28, 1973, United States Border Patrol Agents Scott and Young were on routine patrol duty at El Paso, Texas, watching for aliens who might cross the border between the United States and Mexico. They observed from a distance that a Volkswagen stopped at a parking lot, that appellant Jaqua alighted therefrom and within several minutes returned to the vehicle and drove off. Their suspicions having been aroused, the agents followed the Volkswagen, and by the use of a siren and flashing headlights signalled Jaqua to stop. He did not stop or slow down until he was forced to do so by the action of Agent Scott in pulling the patrol car in front of the Volkswagen.

The agents testified that appellant was hostile, profane and belligerent, but after they identified themselves appellant consented to a search of his vehicle. No aliens or contraband was found. Jaqua was asked why he did not stop and replied, "It is late, and I want to go home. You are lucky I didn't have my pickup truck or I would have rolled right on over you." Jaqua was told that he was being held for further routine investigation, to determine if the vehicle was stolen or whether there was a warrant out on him, and he replied, "To hell with the investigation, I want to go home, you can mail my license to me." When he was told that he was not going anywhere, Jaqua proceeded to enter his car, whereupon Agent Scott stepped in front of the vehicle and told him he could not leave. Jaqua pulled forward approximately 12 inches, striking Scott across the shins. Officers Capraro and Yanez of the El Paso Police Department shortly thereafter arrived on the scene in response to a call from Agent Young. Capraro questioned the agents and Jaqua and was informed of their respective versions of the incident. Jaqua was then placed under arrest by the police officers. Both agents admitted that Jaqua had not been speeding, trying to avoid them, or otherwise driving in a reckless manner. However, they could not understand his refusal to stop.

Richard M. Capraro, a member of the El Paso Police Department, testified that when he arrived Jaqua was already under arrest. Upon questioning, Jaqua told Capraro that he did not stop because he was scared, and that when the patrol car came up alongside of him he was so frightened that if he had had a gun he would have shot the agents. Jaqua explained that he had worked a long time that night and was tired; all that he cared about was going home, emphasizing his remarks with profanity. Following this conversation Capraro and Yanez placed Jaqua in the police car and drove him to the office of the Justice of the Peace. It was not until Jaqua arrived there that he was advised of his constitutional rights. Appellant was initially charged with the state offense of assault with a motor vehicle which was later dismissed.

Jaqua testified in his own behalf. He denied ever having the intention of running over Agent Scott and explained the encounter as accidental. On cross-examination, in an effort to impeach defendant's testimony of lack of intent, Government counsel asked him if it was not true that he had a bad temper, to which he replied, "No Sir, I don't think I have any worse temper than anyone else." Over objection, overruled by the trial judge, Government counsel then proceeded to question Jaqua in regard to his alleged involvement in prior assaults in the years 1962, 1965, and 1968. Defendant admitted being involved in disagreements with other people but denied any assaults. The 1962 incident involved a shooting into the home of his ex-wife, which defendant stated turned out to be the act of her boyfriend, but admitted that as a result of the incident his wife had him placed under a peace bond which was released by the Justice of the Peace. The 1965 incident involved the striking of a lady. He recalled the encounter but denied striking her. The 1968 incident involved the destruction of firewood valued at less than $5. Defendant stated that he had been in a part-time business cutting firewood on a ditch which be-

longs to the United States Bureau of Reclamation, that he got into an argument with a man who claimed he owned the wood. On redirect, he testified that there had been no convictions resulting from any of the incidents.

 The Government contends that the evidence of appellant's prior so-called "criminal activity" was admissible under several theories—to establish intent and knowledge, to rebut allegations of mistake or accident made by appellant, and to impeach him on the issue of his character, specifically that of his temper. We disagree.

In Gilstrap v. United States, 5 Cir., 1968, 389 F.2d 6, 9, we said:

"Generally, evidence of prior criminal activity of a similar nature is inadmissible to prove the commission of a later offense. However, there are exceptions to this general rule of exclusion, and where intent and knowledge are essential elements of the crime for which the defendant is being tried, evidence of other transactions, even though criminal in nature, is admissible to prove the necessary criminal intent or guilty knowledge, *if the transactions are so connected with the offense charged that they serve to show a general pattern.* Pardo v. United States, 5 Cir., 1966, 369 F.2d 922. Evidence that similar or related offenses were committed over a period of time tends to show a consistent pattern of conduct highly relevant to the issue of intent. Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949)." (Emphasis supplied.)

We further said in *Gilstrap*, 389 F.2d at 10:

"The evidence must be of similar acts *occurring reasonably near in time* and reflecting intent similar to that charged in this case." (Emphasis supplied.)[3]

The Government's reliance on *Gilstrap* is misplaced. There is no similarity or discernible pattern between the transactions inquired into and the offense charged, nor is there any evidence in the record that Jaqua committed these acts. The error in allowing interrogation of Jaqua about these incidents was further compounded by permitting Government counsel to refer repeatedly to Jaqua's "prior history of criminal activity" and his "record and background." The prosecution's remarks were without evidentiary foundation and far exceeded fair comment. We cannot ascribe to them the label of "harmless error." *See* United States v. Garber, 5 Cir., 1972, 471 F.2d 212, 217; Ginsberg v. United States, 5 Cir., 1958, 257 F.2d 950; Steele v. United States, 5 Cir., 1955, 222 F.2d 628; United States v. Sanchez, 5 Cir., 1973, 482 F.2d 5.

Reversed and remanded.

---

3. *See also* United States v. Martinez, 5 Cir., 1972, 466 F.2d 679, 683; United States v. Hayes, 5 Cir., 1971, 444 F.2d 472, 474; United States v. McGlamory, 5 Cir., 1971, 441 F.2d 130, 137; United States v. Pittman, 5 Cir., 1971, 439 F.2d 906, 908; United States v. Justice, 5 Cir., 1970, 431 F.2d 30, 32–33; Weiss v. United States, 5 Cir., 1941, 122 F.2d 675, 682; United States v. Sanchez, 5 Cir., 1973, 482 F.2d 5.