**UNITED STATES of America, Appellee,**

v.

**John CONLEY, Jr., Appellant.**

No. 75–1017.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1975.

Decided Aug. 15, 1975.

Rehearing and Rehearing En Banc Denied Oct. 21, 1975.

Certiorari Denied Feb. 23, 1976. See 96 S.Ct. 1125.

---

Allen I. Harris, St. Louis, Mo., for appellant.

Liam S. Coonan, Dept. of Justice, St. Louis, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Appellant John Conley, Jr., was convicted of distributing heroin in violation of 21 U.S.C. § 841(a)(1) following a jury trial in the United States District Court

for the Eastern District of Missouri.[1] Conley does not challenge the sufficiency of the evidence to support his conviction, but asserts instead that the District Court erred by (1) admitting into evidence testimony concerning conversations about narcotics sales not connected with the distribution for which Conley had been indicted, (2) allowing hearsay testimony relating to acts other than those for which Conley was being tried, and (3) improperly instructing the jury on the definition of "reasonable doubt." Conley also contends that the sentence imposed upon him by the District Court was so excessive as to constitute an abuse of discretion. We affirm both the judgment of conviction and the sentence imposed by the District Court.

On August 1, 1973, Robert Stewart, a special employee of the Drug Enforcement Administration, met with John Conley, Jr., at the Regal Sports Lounge in St. Louis, Missouri, where he arranged to purchase heroin from Conley on the following day. At approximately 2:50 p. m. on August 2, Stewart, having previously been strip-searched, went to the Regal Sports Lounge accompanied by Eddie Guilbeaux, a DEA agent, who carried $1300 in marked government currency. They left when Conley did not appear. Later that afternoon, again having been strip-searched, Stewart returned to the Regal carrying the $1300 in marked government currency, again accompanied by Agent Guilbeaux. Stewart and Guilbeaux met Conley, talked for a few minutes and left. About 25 minutes later, Stewart returned and again met Conley. As the two of them were walking out of the Regal together, Stewart gave Conley the $1300 in exchange for approximately 47 grams of heroin. Guilbeaux observed the transaction from an automobile parked about 30 feet away.

Conley was arrested the next day, but none of the government's marked money was ever recovered. He was later indicted for distributing heroin and for conspiring to distribute heroin. Following his trial and conviction for distributing heroin on August 2, 1973, he was sentenced to 15 years in prison and to a special term of 3 years parole.[2]

I.

At trial, testimony was admitted, over Conley's relevancy objection, concerning conversations about the purchase and sale of narcotics which occurred in Conley's presence on six different occasions over an 18 month period prior to August 2, 1973.[3] Taken as a whole, the chal-

---

1. The Honorable James H. Meredith presiding.

2. Conley was originally charged in a three-count indictment with distributing heroin on July 21 and August 2, 1973, and with conspiring to distribute heroin. He was tried on these charges in December, 1973. During trial, the conspiracy charge was dismissed on the government's motion. A mistrial was declared following the failure of the jury to reach a verdict.

   Conley was retried in March, 1974. The jury convicted him of distributing heroin on August 2, 1973, but found him not guilty of the July 21 charge. We reversed this conviction because of references made during trial to prejudicial information. *United States v. Conley,* 503 F.2d 520 (8th Cir. 1974).

   Upon remand, Conley was again tried and convicted in December, 1974, for distributing heroin on August 2, 1973.

3. Included in the controverted evidence was testimony by government personnel about:

(1) a meeting in early 1972 at the home of Lloyd McIntosh at which Conley was present where the purchase and sale of narcotics was discussed by others in a conversation that did not involve Conley;

(2) another meeting at the McIntosh residence in May, 1972, where a sale of narcotics was arranged between third parties and where Conley described an electronic eavesdropping device being used by the government to intercept discussions between informants and narcotics dealers; Conley then said that, because of this, dealers should deal only with one customer at a time in order to avoid witnesses to a transaction;

(3) a conversation between Robert Stewart, Agent Guilbeaux and Conley at the Hi-Note Lounge in early 1973 wherein Conley asked them why they had not purchased a quantity of heroin that they were supposed to purchase from a Billy Thompson;

(4) a discussion between Guilbeaux, Stewart and Conley on April 3, 1973—Conley told them to buy "dope" from Billy Thompson and

lenged evidence tended to show Conley's continuous involvement in illegal narcotics traffic during this period. The District Court indicated to counsel out of the jury's hearing that the testimony would be admitted for the limited purpose of showing Conley's intent to distribute heroin on August 2, 1973. Conley charges that the admission of this testimony was erroneous and prejudicial. We are thus presented with still another case wherein we must decide the proper use of evidence of other crimes.

In this circuit, evidence of other crimes or criminal conduct is generally inadmissible, except that "[s]uch evidence is relevant to prove '(1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) identity of the person charged with the commission of the crime on trial.'" *United States v. Cochran,* 475 F.2d 1080, 1082 (8th Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *accord, United States v. Lewis,* 423 F.2d 457, 459 (8th Cir.), *cert. denied,* 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970).[4]

The government in this case faced a difficult task in proving its case. It was necessary to convince the jury that the defendant, a prominent politician and former member of the state legislature, distributed heroin to a government agent and a government special employee. The nature of the transaction between the defendant and these government men on August 2, 1973, would be one determined upon the credibility of the witnesses. In order to show that the government's version of the August 2nd transaction was neither improbable nor incredible, the prosecution offered testimony of the emerging relationship between Conley and the government men. It began in 1972, with Conley present when narcotics activities were discussed by others, but not by Conley. It continued with another meeting at which Conley expounded upon ways to avoid being convicted by means of electronic bugging; it continued in 1973 with Conley's referral of the government men to one Billy Thompson to buy heroin and a subsequent meeting at which Conley expressed knowledge of the buys from Thompson. A meeting with Conley on August 1st was described at which the parties set up the August 2nd buy.

While the disputed conversations extend over a substantial range of time, we find no difficulty in holding that the course of conduct depicted by this testimony displayed not only the defendant's knowledge of the heroin traffic in which he was engaged and his intentional participation in an act which he knew to be illegal, but also a common plan or scheme to distribute heroin which emerged in the intervening months as "an uninterrupted course of action." *See United States v. Cochran, supra,* 475 F.2d at 1082.

We recently observed that before any evidence of other crimes or criminal activity can be admitted, "it must be shown that (1) an issue on which other crime evidence may be received is raised; (2) that the proffered evidence is relevant to that issue; (3) that the evidence is clear and convincing; and (4) that the

---

that Conley would later put some "real stuff" in their hands;

(5) conversations between Guilbeaux, Stewart and Conley on May 14, 1973, wherein Conley told them they would have to buy at least eight ounces of heroin and asked them why they waited so long to complain to him about the quality of the heroin they had purchased previously; and

(6) the meeting on August 1, 1973, where the purchase of heroin was arranged which gave rise to this appeal.

4. *See also United States v. Marchildon,* 519 F.2d 337 (8th Cir., 1975); *United States v. Gocke,* 507 F.2d 820 (8th Cir. 1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); *Johnson v. United States,* 506 F.2d 640 (8th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 659 (1975); *United States v. Buckhanon,* 505 F.2d 1079 (8th Cir. 1974); *United States v. Howard,* 504 F.2d 1281 (8th Cir. 1974); *United States v. Clemons,* 503 F.2d 486 (8th Cir. 1974); *United States v. Thompson,* 503 F.2d 1096 (8th Cir. 1974).

probative worth outweighs the probable prejudicial impact." *United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974). However, we also recently had occasion to reaffirm our statement in *United States v. Cochran, supra,* 475 F.2d at 1082 that

> the trial court can in its discretion admit relevant evidence of other criminal acts and reversal is only commanded when "it is clear that the questioned evidence has no bearing upon any of the issues involved."

*United States v. Thompson,* 503 F.2d 1096, 1098 (8th Cir. 1974); *accord, Johnson v. United States,* 506 F.2d 640, 644 (8th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 659 (1975). Applying the fourfold test set forth in *Clemons, supra,* we find no abuse of discretion here.

■ It is urged that intent was not an issue in this case, and therefore the evidence of other criminal activity should be excluded under *Clemons, supra.* We disagree. This is not a case in which intent was not an element of the crime, *see United States v. Crawford,* 438 F.2d 441, 447 (8th Cir. 1971), or one in which the parties stipulated to the element of intent but chose to rely upon some other defense, such as failure to prove that the substance was heroin, *e. g., United States v. Gavic,* 520 F.2d 1346 (8th Cir. 1975). *See also United States v. Buckhanon,* 505 F.2d 1079 (8th Cir. 1974). The government was bound to prove in this case that the distribution of heroin

was intentional. It could not safely withhold evidence of the clandestine relationship between its witnesses and a man in public life until after the defendant had closed his case,[5] because such evidence could then be offered only if the defendant took the stand. Moreover, the government was entitled to anticipate the defendant's obvious defense. *See United States v. Cirillo,* 499 F.2d 872, 888–89 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). On the record before us, we hold that the evidence was admissible to show the defendant's knowing and intentional development of a scheme to sell heroin and of a plan to do so consistent with the actual mode of distribution.[6] *United States v. Tatum,* 496 F.2d 1282, 1284 (5th Cir. 1974); *Von Feldt v. United States,* 407 F.2d 95 (8th Cir. 1969). Moreover, the evidence, if believed, was clear and convincing, and under the facts in this case the probative value substantially outweighed the probable prejudicial impact.[7]

### II.

Appellant further contends that government evidence describing the pre-August 2nd meetings[8] included hearsay statements by third parties which were improperly admitted. We cannot agree.

■ The challenged evidence consists of testimony by Robert Stewart and Agent Guilbeaux concerning what third parties said in Conley's presence. It was

---

**5.** *But cf. United States v. Adams,* 385 F.2d 548 (2d Cir. 1967).

**6.** As an example, Conley's earlier statements about not selling to more than one customer at a time were implemented in the August 2nd sale, wherein he changed his original instructions and said that he would not sell to Guilbeaux but would sell only to Stewart. Only after Guilbeaux and Stewart had left and Stewart had returned alone did the transaction take place. *See United States v. Tatum,* 496 F.2d 1282, 1284 (5th Cir. 1974) (evidence of drug transaction not charged relevant to show arrangement of the drug transaction for which defendant was indicted).

**7.** We note that the District Court did not instruct the jury on the limited purpose for

which the evidence of other crimes was admitted. In the absence of a specific defense request, however, no limiting instruction is required where the evidence was relevant to an issue in the case. *United States v. Blount,* 479 F.2d 650, 651 (6th Cir. 1973); E. Cleary, McCormick's Handbook of the Law of Evidence § 59 (2d ed. 1972); Fed.R.Evid. 105. Our examination of the record discloses that no such request was made at Conley's trial. Moreover, in his charge to the jury, the District Court clearly instructed the jury that "[t]he defendant is not on trial for any act or conduct not alleged in the indictment."

**8.** *See* note 3 *supra,* (1) and (2).

offered to show that the statements were made in Conley's presence and was relevant whether or not the statements were true or accurate. This is not hearsay. E. Cleary, McCormick's Handbook of the Law of Evidence § 249 (2d ed. 1972); *cf. Creaghe v. Iowa Home Mutual Casualty Co.,* 323 F.2d 981, 984 (10th Cir. 1963).

> Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.

E. Cleary, McCormick's Handbook of the Law of Evidence § 246, at 584 (2d ed. 1972); *accord,* Fed.R.Evid. 801(c). Because the controverted testimony was fully subject to cross-examination and because its probative value, *i. e.,* the fact of utterance, was in no way dependent upon the veracity of an out-of-court declarant we hold that the District Court did not err in admitting it.

Again we note the absence of a limiting instruction and the failure of defense counsel to request one. This may have been a trial tactic designed to prevent the underscoring of the testimony by the District Judge, but in any event, absent a specific defense request, failure to instruct the jury of the limited purpose for which it could consider these out-of-court statements was not error. *United States v. Blount,* 479 F.2d 650, 651 (6th Cir. 1973).

Finally, even if the conversations should be regarded as hearsay, we think they were not prejudicial. The conversations by third parties in Conley's presence dealt with criminal acts of others and in no way implicated him in those activities.[9]

### III.

Appellant challenges the propriety of the instruction given by the District Court to the jury on the issue of reasonable doubt:

> It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly. Putting it in another way, a reasonable doubt means a doubt based on reason and not the mere possibility of innocence.

■■ This instruction is substantially the same as that set forth in E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 11.01 (2d ed. 1970). The only difference is the addition by the District Court of the final sentence, and it is apparently this difference upon which appellant bases his challenge, directing our attention to *United States v. Atkins,* 487 F.2d 257 (8th Cir. 1973). This court has repeatedly stated that an instruction on reasonable doubt should be couched in terms of hesitation to act. *E. g., United States v. Cole,* 453 F.2d 902, 906 (8th Cir.), *cert. denied,* 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972). Since that is precisely the substance of the challenged instruction, appellant's contention is without merit. We hold that the District Court conveyed the proper concept of reasonable doubt. *See United States v. Fallen,* 498 F.2d 172, 176–77 (8th Cir. 1974); *Hooper v. United States,* 216 F.2d 684, 689 (10th Cir. 1954).

### IV.

■ Finally, appellant complains that the District Court abused its discre-

---

**9.** On appeal the government argues alternatively that, since its evidence established the existence of a conspiracy, statements of co-conspirators were admissible against the defendant as an exception to the hearsay rule. In view of our holding, we do not reach this alternative contention.

tion by imposing the maximum permissible sentence on Conley, a man who is fifty-four years old and who has suffered two heart attacks. However, "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review." *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Only where it is shown that the trial judge has failed to exercise his discretion or in doing so has manifestly or grossly abused that discretion will the appellate court intervene. *See Woosley v. United States,* 478 F.2d 139 (8th Cir. 1973); *United States v. Nick,* 503 F.2d 418 (8th Cir. 1974). The appellant has not carried that burden.[10]

This case has had a torturous history, including a mistrial, a new trial, and a second new trial. Under such circumstances, we have carefully reviewed the record to make certain that, aside from our rulings upon the specific issues, the conviction now before us on appeal emanated from a fair trial. Our reading of the entire transcript, together with our review of the exhibits and other matters admitted into evidence, convinces us that the District Judge conducted the trial with scrupulous fairness and with full regard for the rights of the defendant.

The judgment and sentence of the District Court are affirmed.

## ORDER DENYING PETITION FOR REHEARING EN BANC

The petition for rehearing en banc in the above case is denied by five of the judges voting in favor of the denial. Three of the judges vote in favor of the rehearing en banc.

LAY, Circuit Judge, joined by HEANEY, Circuit Judge, would grant the petition for rehearing en banc for the following reasons.

The defendant, Conley, was convicted of one count of sale of heroin on August 2, 1973, under 21 U.S.C. § 841(a)(1). Before trial, the district court cautioned the government that only those conversations at which Conley was present could be admitted since a prior conspiracy charge had been dismissed. Within these restrictions, the government in its case in chief offered extensive and completely disjointed testimony regarding events before the alleged sale on August 2, 1973.[1]

---

10. The record itself is likewise unpersuasive. Both the defendant and his counsel declined the District Court's invitation at allocution to speak in mitigation of punishment.

1. First, Robert Stewart, an informer for the Drug Enforcement Administration (DEA), testified that he had met Conley twice in early 1972, the year before the sale:

   1) According to his testimony, Stewart and one Walter Lee Saunders went sometime in *January or February, 1972* to the home of Lloyd McIntyre, a/k/a McIntosh. Conley was present and allegedly within his hearing, Saunders arranged to buy one ounce of heroin from McIntyre after going into an adjoining room to test a sample of the product. Conley was never arrested for or charged with participation in this sale.
   2) Stewart also testified that in *May, 1972,* he and Saunders returned to McIntyre's home, and again, Conley was present. Saunders purchased ½ ounce of heroin from McIntyre, and while all waited for the dope to be delivered, Conley dis-

cussed new government drug investigation techniques and how to avoid them.

Thereafter, Stewart and Eddie Guilbeaux, the DEA case agent, testified to the following events, in 1973, the year of the sale:

   3) *March, 1973.* Stewart and Guilbeaux met Conley at the Hi-Note Lounge, and Conley asked them why they had not yet carried through their agreement to buy 1 ounce of heroin from one Billy Thompson. No testimony was offered as to when this purchase agreement was made. The two agreed to conclude the deal with Billy, and Guilbeaux testified over objection that they did later buy the heroin from Billy Thompson.
   4) *April 3, 1973.* Stewart and Guilbeaux met Conley on a street corner where the latter was doing political work for an election that day. They discussed another sale and Conley told them to get the heroin from Thompson. Conley promised to sell them three ounces of really good stuff the following weekend and they agreed to buy it.

The defendant challenges the admission of the testimony on events prior to the August 2, 1973 sale as too remote in time to have any probative value and as evidence of other crimes which is neither relevant nor clear and convincing. In the panel opinion these events are said to be admissible to show intent, knowledge and a "common plan or scheme" or "a course of dealing." The material was offered at trial on the theory that it tended to show the defendant's intent.

This evidence should have been excluded. It was offered in the government's case in chief to show defendant's intent, when in fact, intent was never an issue at any time in the case. In order to admit "other crime" evidence, it is not enough that intent is an element of the offense and that the defendant has pleaded not guilty. Such evidence should not be permitted for the purpose of proving intent unless the defense in some affirmative manner denies the intentional aspect of the crime. This would be the case when the theory of the defense was entrapment, lack of knowledge, mistake or accident. In this case however, the defendant *denied the act of distribution itself.* As Judge Ross, speaking for this court, recently stated:

> The purpose of evidence bearing on intent is to negate an innocent mental state after the act charged has been established as having been done by the defendant. 2 J. Wigmore, Wigmore on Evidence § 304, at 202 (3d ed. 1940). In the instant case the defend-

ant was seriously contesting that she had given the heorin [sic] to Arthur, but was willing to stipulate that if she committed the crime, she had the requisite criminal intent. Thus, intent was not seriously in issue, and the plea of not guilty did not make it an issue. *See* C. McCormick, Law of Evidence § 190, at 452 n. 54 (2d ed. 1972); *United States v. Broadway,* 477 F.2d 991, 994 (5th Cir. 1973).

*United States v. Buckhanon,* 505 F.2d 1079, 1083 n. 1 (8th Cir. 1974).

*See also United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974); *United States v. Simon,* 453 F.2d 111, 115 (8th Cir. 1971); *United States v. Brown,* 453 F.2d 101, 107–08 (8th Cir. 1971); *United States v. Crawford,* 438 F.2d 441, 448 (8th Cir. 1971) (dicta); *United States v. Adams,* 385 F.2d 548, 551 (2nd Cir. 1967); *United States v. Byrd,* 352 F.2d 570 (2nd Cir. 1965). While it may not be necessary for the government to wait until the defense has rested to use such evidence, it should not be admitted until cross-examination or some other action by the defense places intent seriously at issue. *See United States v. Brown,* 453 F.2d 101, 107–08 (8th Cir. 1971).

The panel opinion, however, holds that the evidence was admissible on an additional ground, that is, that the prior incidents tended to show "a common plan or scheme to distribute heroin which emerged in the intervening months as 'an uninterrupted course of action'."

---

5) *May 14, 1973.* Stewart met Conley early one morning at a funeral parking lot and Conley told him that Melvin Saunders (*not* the person Stewart had worked with in 1972) was to be buried that day. Later that morning, both Stewart and Guilbeaux met Conley at the Pier Lounge to discuss another sale. Conley told them that he could not sell less than 8 ounce quantities and that they should pick up the heroin from Billy Thompson. That same evening Stewart and Guilbeaux met Conley on Eastern Street where Guilbeaux told Conley that some dope Billy Thompson had given him sometime earlier was of poor quality. Conley asked why they had waited so long to tell him

since they had seen him "a hundred times since then."

6) *July 7, 1973.* Stewart and Conley met at 8:30 A.M. in the Pier Lounge and arranged to meet later that same day at the Regal Sports Lounge. They did meet there later, but did not discuss narcotics. Stewart testified that Conley said he was opening a bar which would be in his daughter's name, not his own. This was ordered stricken.

7) *August 1, 1973.* Stewart met Conley at the Regal Sports Lounge to tell him that Guilbeaux wanted to buy an ounce of heroin. Conley said that heroin was available and arranged to meet Guilbeaux the next day at 3:00 P.M.

With the exception of the August 1 transaction, all other evidence suggesting criminal conduct was not in any way related to any common plan or scheme leading up to the sale of August 2. This theory has too often been loosely mentioned with the intent exception, as here, but the two are completely separate. They place different limits on the evidence that can be admitted. Professor Wigmore says that to prove intent, merely similarity of other crimes to the offense charged will suffice. More is required, however, under the "common plan or scheme" exception.

> In the former case (of Intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish *a definite prior design or system which included the doing of the act charged as a part of its consummation.* In the former case, the result is to give a complexion *to a conceded act,* and ends with that; in the present case, the result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.
>
> The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*

2 J. Wigmore, Evidence § 304 at 202 (3d ed. 1940) (emphasis added).

Professor McCormick states that other crimes evidence may be admitted to show:

> The existence of a larger continuing plan, scheme or conspiracy, of which the present crime on trial is a part. *This will be relevant as showing motive and hence the doing of the criminal act,* the identity of the actor, and his intention, where any of these is in dispute.

C. McCormick, Evidence § 157 at 328 (1954) (emphasis added).

*See also* J. Weinstein & M. Berger, Evidence ¶ 404[09] at 404–59 (1975); H. Rothblatt, Handbook of Evidence for Criminal Trials 206–07 (1965). Significant here is the fact that the government dismissed its conspiracy charge and yet was allowed to bootstrap its proof of the August 2 sale by evidence of a conspiracy to sell through other transactions. This reasoning is circuitous to say the least.

This circuit has in recent cases allowed the prosecution to introduce evidence of prior drug transactions in narcotics cases under the common plan or scheme rationale so long as the incidents are closely related in time to the offense charged. *See United States v. Buckhanon,* 505 F.2d 1079, 1083–84 (8th Cir. 1974) (narcotics); *Sears v. United States,* 490 F.2d 150, 152–53 (8th Cir. 1974) (bootleg alcohol).

Even under the most liberal interpretation of the rules however, several of the alleged meetings between Conley and Stewart would seem inadmissible. First, the two meetings in early 1972, more than a year and a half before the sale occasioning the trial, are completely detached and remote in time. Further, since all that Conley was said to have done on those occasions was to be present in the same room in which other persons discussed the sale of heroin without taking any part in these transactions, the prejudice outweighs any arguable relevance. *Cf. United States v. Kelton,* 446 F.2d 669, 671 (8th Cir. 1971). It proves nothing more than that Conley's associates were not the best of men and that he was possibly guilty of misprision of a felony. Judge Heaney's statement in *United States v. Crawford,* 438 F.2d 441 (8th Cir. 1971) seems especially relevant here:

> In today's society, possibly no act is more abhorred than the selling of narcotics. And nothing makes it more difficult for a defendant to receive a fair and unbiased trial than for the jury to think that the defendant or his acquaintances are men of bad character.

438 F.2d at 446.

. Introduction of the first meeting on May 14, 1973, when Stewart allegedly was invited to a funeral by Conley, should not have been allowed since the *only* relevance it could have would be to lead the jury to believe that the defendant was implicated in drug-related deaths or murders. This was likely because the last name of the deceased, Melvin Saunders, was the same as that of the addict and drug dealer who first introduced Stewart to Conley, one Walter Saunders. Since narcotics were not discussed on this occasion, it was not relevant to any proper purpose and was prejudicial.

The alleged meeting between Stewart, Guilbeaux and Conley at the Regal Sports Lounge on July 7, 1973 in which Conley was said to have announced that he would open a bar in his daughter's name so that his interest in it could not be traced, was similarly irrelevant. After the jury's mind was tainted, the trial court ordered this testimony stricken.

This circuit's liberality in admitting such highly prejudical proof is unfortunate. Unless the acts are such as would naturally indicate a preexisting design encompassing the precise crime charged, it is more plausible that this evidence shows only a propensity to commit crimes of a similar nature.

The majority acknowledges that the government faced a difficult task in proving its case. This is true in every criminal case; the framers of our Constitution intended it to be so. The requirement that the government prove its case beyond a reasonable doubt was not designed to make the government's task an easy one. Our forebears recognized the dangers involved when the awesome forces of government are pitted against the meager resources of the individual whose life or liberty is at stake. The best bulwark against those dangers in a criminal trial is procedural fairness. The rule that evidence of other crimes shall not be admissible in the trial of a criminal case is rooted in the due process concerns that a man should not be tried for crimes without notice of the charges, nor should he be forced to defend against a confusing mass of unrelated allegations. The rules of evidence were designed to adhere to those principles, as Judge Sanborn once eloquently wrote:

> Such evidence tends to draw the attention of the jury away from a consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdicts in accordance with their views on false issues rather than on the true issues on trial. . . . "Evidence of this character necessitates the trial of matters collateral to the main issue, is exceedingly prejudicial, is subject to being misused, and should be received, if at all, only in a plain case."

*Paris v. United States*, 260 F. 529, 531 (8th Cir. 1919).

Today we glibly make exceptions which engulf the rule, and "other crime" evidence is freely and recklessly used. According to the panel opinion, proof need not even be of crime; now mere suggestions, suspicions, associations and innuendo are permitted.[2] The government should be restricted to proof of the crime charged and any events inextricably related to it. Although a defendant has allegedly committed a similar crime at some time long before the date of the offense charged, that fact is generally relevant only to the impermissible purpose of showing his propensity to do wrong. Now we open the door even wider, and allow the government's proof

2. The Fifth Circuit relied on prior Eighth Circuit cases for the following rule on other crime evidence:

> Our holding is simply that when proof of an assertedly similar offense is tendered to establish necessary intent, the other offense proved must include the essential physical elements of the offense charged, and these physical elements, but not the mental ingredients of the offenses must be clearly shown by competent evidence.

*United States v. Broadway*, 477 F.2d 991, 995 (5th Cir. 1973).

of other crimes even before the defendant places his intent or knowledge in issue.

Criminal procedures which allow attacks on a defendant's character and past conduct rather than providing proof of the crime charged harm only the innocent and are totally unnecessary to convict the guilty.

BRIGHT, Circuit Judge, would grant the petition for rehearing en banc for the following reasons:

1) This appears to be an appropriate case for the establishment of consistent guidelines by the full court relating to the admissibility of evidence of the accused's criminal conduct not charged in the indictment. Although in theory such evidence is generally excluded, in practice the exceptions have virtually swallowed the rule.[3]

2) In this case the questioned evidence was admitted despite a general objection without an appropriate instruction explaining to the jury the limited purpose of the evidence. The panel opinion declines to consider this omission as error, holding that no limiting instruction is required in the absence of a specific defense request. See panel opinion, supra at note 7; citing United States v. Blount, 479 F.2d 650, 651 (6th Cir. 1973).

This restrictive approach seems inconsistent with the important principle of justice and fairness that the general rule excluding evidence of prior criminal acts seeks to implement. It is essential to our system that a conviction be based upon an unbiased examination of evidence of a specific criminal act rather than upon an attack upon a defendant's character and associates.

In somewhat analogous circumstances the District of Columbia Circuit Court has held:

> [W]henever evidence is admitted only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction. The danger of prejudicial effect from such evidence is so great that only an immediate and contemporaneous instruction can be considered sufficient to protect defendants. As long as we continue to have rules of evidence which admit testimony for some purposes but not for others, we must guard against its misuse by the jury. [United States v. McClain, 142 U.S. App.D.C. 213, 440 F.2d 241, 246 (1971).]

Obviously this language goes very far in labeling every omission of an immediate cautioning instruction plain error. McClain has not been applied to require reversal where substantial prejudice seemed unlikely. See United States v. Henson, 159 U.S.App.D.C. 32, 486 F.2d 1291, 1310 n.2 (1973)(en banc) (Bazelon, C. J., concurring and dissenting), and cases cited.

Here, the record discloses that, in response to an objection by the accused, the trial court admitted the questioned evidence for a limited purpose. Assuming, arguendo, the admissibility of this evidence as bearing on Conley's intent, the appellant suffered a double prejudice—since the jury thus learned of the accused's other criminal activity without

---

**3.** See United States v. Goodwin, 492 F.2d 1141, 1148–55 (5th Cir. 1974). The court agreed with Professor Charles Wright that the exceptions have become so numerous that

> the attitude of prosecuting attorneys may well be like that of the man who was asked what he thought of Prohibition and replied: "It sure beats not drinking at all." [Id. at 1149 n.5 quoting 2 C. Wright, Federal Practice and Procedure, Criminal § 410 at 125 n.75.]

It is interesting that of the approximately 60 circuit court opinions addressing this issue between June 1, 1973 and June 1, 1974, only United States v. Goodwin, supra, reversed because evidence of prior crimes was improperly admitted. "Note: The United States Court of Appeals: 1973–74 Term Criminal Law and Procedure," 63 Georgetown Law Journal 325, 491–93 & nn. 1170–81 (1974). Arguably, United States v. Jaqua, 485 F.2d 193 (5th Cir. 1973), is a second reversal in this area. There the defendant was cross-examined about what the court termed "so-called 'criminal activity.'" Id. at 195.

then being told of the limited scope and purpose of that evidence.

This case is an appropriate one for the full court to consider adopting a rule, similar to that enunciated in *McClain*, requiring the trial court to immediately caution the jury against misuse of evidence of prior criminal activity by the accused, unless the cautionary instruction is expressly waived.

Circuit Judges LAY and HEANEY join me in these views.