**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Brian Paul SANCHEZ, Defendant-Appellant.**

No. 72–3649.

United States Court of Appeals,
Fifth Circuit.

July 26, 1973.

**6**

Joseph A. Calamia, John L. Fashing, El Paso, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Edward S. Marquez, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and INGRAHAM, Circuit Judges.

AINSWORTH, Circuit Judge:

Sanchez appeals from his conviction on a jury verdict of guilty, of assaulting, resisting, opposing, impeding and interfering with federal officers while in performance of their official duties, in violation of 18 U.S.C. § 111. We reverse because of the district court's error in permitting the prosecutor to cross-examine appellant in regard to prior criminal activity, and because of the prejudicial character of the prosecutor's argument to the jury.

On September 2, 1972, appellant and a group of companions crossed the international border from Juarez, Mexico, to El Paso, Texas. After declaring his United States citizenship and purchases, he passed through Customs. According to the Government's evidence, appellant then began to interfere with the duties of the United States Customs Inspectors in their attempts to clear the remaining members of the group through Customs. Instead of allowing these people to make their necessary declarations, he continued to supply answers for them, shouting that they were United States citizens, that it was unnecessary to answer the Inspectors' questions and that they had their civil rights. An argument ensued, which shortly thereafter erupted into a full-blown disturbance involving pushing, shoving and abusive and insulting language by appellant and his group.

Prior to the trial, appellant filed a motion requesting that the court instruct the prosecutor not to mention during the trial appellant's prior conviction of homicide with a motor vehicle, then on appeal, and a charge of aggravated assault of a bartender, the trial of which had resulted in a hung jury. At the conclusion of the Government's case, the trial court granted the motion.

In its case in chief the Government produced evidence tending to show an unprovoked assault by appellant on the federal officers. The Government's theory of the incident is that it was a planned demonstration by appellant and

his companions to accomplish a confrontation.

Appellant took the stand in his own defense and denied having assaulted anyone. His version of the incident was that he had been assaulted by the officers. He said that he had been shocked by the incident, and further said, "I never had anything like that happen to me." Using this statement as a base, the Assistant United States Attorney cross-examined appellant in regard to it, inquiring whether he meant that he had never been involved in acts of violence resulting from conflicts with other human beings. Appellant repeatedly qualified his answer by replying in effect that nothing similar to the incident at the border had ever occurred to him. Despite the ruling of the trial court prohibiting inquiry into certain prior criminal acts of defendant, the prosecutor then asked Sanchez whether he had been involved in an assault on a bartender and received a negative reply. At this point the trial court overruled an objection by defense counsel and reconsidered and rescinded its prior ruling, on the theory that appellant himself had opened the door to this type of questioning. The prosecution then successfully elicited from appellant admissions in regard to the former criminal proceedings against him in connection with aggravated assault and vehicular homicide. Later the trial court instructed the jury in its charge that evidence or admissions of prior criminal acts was not to be considered as evidence of guilt but was to be used only to impeach or challenge the credibility or believability of the defendant.

 Evidence of convictions for felonies and misdemeanors involving moral turpitude is admissible for impeachment of a defendant who elects to testify. Steele v. United States, 5 Cir., 1957, 243 F.2d 712; Daniel v. United States, 5 Cir., 1959, 268 F.2d 849;

Reese v. United States, 5 Cir., 1965, 353 F.2d 732; Hamilton v. United States, 5 Cir., 1969, 409 F.2d 928; United States v. Sanders, 5 Cir., 1969, 412 F.2d 854; United States v. Smith, 5 Cir., 1970, 420 F.2d 428; United States v. Garber, 5 Cir. 1972, 471 F.2d 212. Criminal activity, short of a conviction, is also admissible for impeachment purposes where the defendant has put his reputation in issue either through his character witnesses, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), or by false assertions on direct examination in regard to prior unlawful activities, Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Under this open-door theory it is immaterial that the inquiry pertains to activities of dissimilar offenses. Michelson v. United States, supra.

██ Applying these principles we find that the appellant's conviction of homicide with a motor vehicle was a conviction for a felony and was therefore properly admitted, notwithstanding the fact that it is presently on appeal. See United States v. Franicevich, 5 Cir., 1973, 471 F.2d 427, 428. We reach a different conclusion, however, in regard to cross-examination of appellant on the charge of aggravated assault. There was no conviction there, only a mistrial. For this evidence to be admissible for impeachment purposes, it is necessary that it come under the open-door rationale.

Appellant's testimony that what happened to him that night at the Customs Station never happened before cannot be characterized as throwing open a subject "which the law has kept closed for his benefit." Michelson v. United States, 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). Nothing he said could properly be construed as justifying the cross-examination by the Government which followed relative to the charge of assault of a bartender.[1]

1. The Assistant United States Attorney cross-examined Sanchez in this regard as follows:

(By Mr. Marquez:)
"Q. Mr. Sanchez, weren't you just recently tried for aggravated assault in

■■ We disagree with the Government's contention that evidence of appellant's prior criminal acts was admissible on the issue of intent. Generally evidence of prior criminal activity of a similar nature is inadmissible to prove the commission of the crime charged. The rule, however, is subject to many exceptions, such as where intent is an element of the offense charged and the prior similar acts are not too remote from that offense. United States v. Martinez, 5 Cir., 1972, 466 F.2d 679, 683; United States v. Hayes, 5 Cir., 1971, 444 F.2d 472, 474; United States v. McGlamory, 5 Cir., 1971, 441 F.2d 130, 137; United States v. Pittman, 5 Cir., 1971, 439 F.2d 906, 908; United States v. Justice, 5 Cir., 1970, 431 F.2d 30, 32–33; Weiss v. United States, 5 Cir., 1941, 122 F.2d 675, 682. We are not persuaded that the charge against appellant of assault on a bartender is evidence of an intent to forcibly assault, resist, oppose, impede and interfere with a federal officer, and it was reversible error to permit this cross-examination of appellant by the prosecution.

■ The Assistant United States Attorney's argument was inflammatory and seriously prejudicial. It was replete with racial and political undertones. He repeatedly characterized Sanchez as a liar. He argued to the jury in part as follows:

"Now, there is no doubt in my mind that this defendant, Brian Sanchez, was not telling the truth. As I started this case this morning, I told you that yesterday we did have an election. An election is where honorable men participate, in our state, including Ramsey Muniz, who ran for Governor under the La Raza Unida Party."

Further, he argued:

"Well, we did have an election yesterday, with many of the people claiming to carry now the banner for the betterment of every citizen in our community and in our nation. Well, this Defendant is attempting to assume that responsibility too. But I tell Mr. Sanchez at this time that if he is willing to assume the responsibility as a member of the La Raza Unida Party, as came out in the evidence in this case that he was a member, if he is willing to assume the responsibility of bettering the lives of the Mexican-American in our nation, then by golly, he should have enough machismo and chicannismo to take that stand and tell you the truth and not lie about the fact that he has never been involved in conflicts with other human beings resulting in acts of violence. And you have an absolute right to take into consideration the fact that he lied under oath and he told you before 'I swear under God that I'm telling you the truth and this is what happened.' But he did have the chicannismo or the machismo to take that stand and admit what he had done in the past under cross examination. He absolutely denies that fact, until finally I brought out the true facts, and he admitted it. And I ask you, is this the kind of man who first tells you that he swears under God to tell the truth and then takes that stand, sworn to tell the truth in this case and lies to you. And I ask you how can you in good conscience believe what this man has said."

Later, in closing argument the Government prosecutor continued in the same vein, in part, as follows:

"He has that right to vote for anybody. He does, yes. Ladies and gentlemen, I'm not prosecuting this man and he's not here today because he's a member of La Raza Unida. I couldn't care less if he were a Republican, or a Democrat or a Communist or what."

the State of Colorado, a trial that I will agree ended up in a hung jury?
"A. Yes, sir.
"Q. All right. You were charged with an act of violence. The bartender was lashed about the face with a pitcher.
"A. That's correct."

Further, he argued:

"You see, we forget about the honest, hardworking citizen that never gets involved in any difficulty that requires the action and investigation of inspectors and agents, and action on the part of the U. S. Attorney's Office. That they are hoping that the system will prevail. Well, I hope that his idea of what the system should be does not prevail. What kind of community are we going to have if this is allowed? He's not the only one that's protected. All of us are protected."

Finally, he argued:

"This is not the type of Defendant we believe. And I tell you all, members of the jury, that this man is not being prosecuted because of his political belief. I couldn't care less what he believed in. He is being prosecuted because of what he has done. And I for one would be the last man on earth to try to violate the rights of Brian Paul Sanchez. Because you see, to me it doesn't matter, because over and above the fact that he may be a Mexican-American, over and above that, or the fact that I may be one, it's the duty that I have to perform to my country, to my nation and to this Court and to the laws that I was sworn to uphold."

■■ The remarks and argument of the prosecutor to the jury went far beyond the realm of fair comment. In *Dunn v. United States,* 5 Cir., 1962, 307 F.2d 883, 886, we found it reversible error "for counsel to express his personal opinion or to make unwarranted inferences or insinuations calculated to prejudice the defendant." Failure of defense counsel to object to the prosecutor's prejudicial argument does not preclude our finding plain error sufficient to justify reversal of the conviction. *See* Rule 52(b), Fed.R.Crim.P. Nor was the error harmless under the circumstances

for it is impossible to conclude that the prosecutor's remarks did not weigh heavily with the jury in bringing about appellant's conviction. See *United States v. Garber,* 5 Cir., 1972, 471 F.2d 212, 217; *Ginsberg v. United States,* 5 Cir., 1958, 257 F.2d 950; *Steele v. United States,* 5 Cir., 1955, 222 F.2d 628.

Reversed and remanded.

GODBOLD, Circuit Judge (specially concurring):

I concur in the opinion of Judge Ainsworth with a single minor exception. A prior conviction for a felony is admissible to prove that a defendant who has taken the witness stand is not a credible witness, but the evidence of this appellant's conviction of homicide with a motor vehicle was not offered for such a purpose. Rather it was offered as a continuation of, and as part of, the prosecution's improper line of cross-examination predicated upon appellant's answer "I never had anything like that happen to me," which the prosecutor recast into a purported statement by appellant that he had never before been involved in any acts of violence relating to other human beings. On the incorrect premise erected by the prosecutor that the appellant had denied participating in any prior act of violence the prosecutor inquired fully concerning the assault on the bartender and the automobile offense, both of which he considered to be prior "acts of violence." Only after he had wrung dry his cross-examination predicated upon the false premise of a denial that appellant had never made, did the prosecutor establish by his final two questions that appellant had been tried and convicted of the automobile offense. This last minute band-aid did not cure the prejudice of the preceding inquiry that should not have been made at all.[1] In short, when properly offered, the fact of a fel-

1. Similarly, the prosecution could not, in the guise of impeaching the believability of the defendant on the stand, ask him the unsavory details of a prior incident in his life none of which would be admissible and, at the end, ask if those incidents had not culminated in a felony conviction.

ony conviction is admissible as probative of the non-believability of the testifying defendant, but it is not admissible in the manner in which done in this trial.