Loysie M. MALLICOTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 52627.

Court of Criminal Appeals of Texas.

March 16, 1977.

Michael L. O'Neal, Dallas, for appellant.

Henry Wade, Dist. Atty., Edgar A. Mason, Fred W. Davis, III, D. Brian Blessing, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for murder under V.T.C.A., Penal Code, Sec. 19.02 upon a plea of not guilty before a jury. The court assessed punishment at ten years' confinement.

This is a case of circumstantial evidence in which we find a multitude of unexplained contradictions in the testimony of the material witnesses. Said evidence may be summarized as follows:

Officer M. D. Cosby of the Dallas Police Department responded to a shooting call during the early morning of April 12, 1974. Upon his initial examination of the apartment he found the body of Everette Leroy Rankin lying on a sofa in the living room. He observed a chest wound in the deceased's body. He further testified that there appeared to have been a struggle and that appellant was in the room muttering, "I had to do it". In his opinion appellant was intoxicated.

Officer J. M. Hunter also responded to the call. He observed a .20 gauge shotgun lying on the floor approximately three feet from the deceased with a barrel pointed away from the body. The presence of broken glass, bottles and an overturned ashtray on the floor indicated to Hunter that a struggle had taken place. Appellant appeared to Hunter to be intoxicated and incoherent. The medical examiner told Hunter that in his opinion the shotgun had been held from six inches to one foot of deceased's body when fired.

Officer Glenn E. Thompson, an investigator from the Crime Scene Search Section of the Dallas Police Department, testified to recovering the shotgun from the apartment approximately eight to twelve inches from the deceased. It was his opinion that a struggle had taken place.

Dr. Vincent DiMaio of the Dallas County Medical Examiner's Office testified that the muzzle of the shotgun was approximately one or one-half inch from Rankin's chest when he was shot and that the weapon was held at a high angle. When the shotgun was discharged, the muzzle was underneath Rankin's undershirt. At the time of death the deceased's blood alcohol level was .283 which indicated to Dr. DiMaio that the deceased was almost to the point of intoxication at which he would lose consciousness. It was Dr. DiMaio's opinion that Rankin's death was a homicide.

The deceased's brother, Jamie Earl Rankin, testified to the deceased's illness and stated that in his opinion his brother would not commit suicide. His testimony concerning an encounter with appellant two and one-half years prior to the shooting forms the basis of appellant's complaint in her First Ground of Error and will be discussed there.

Veedia Garner, called by appellant, lived in a neighboring apartment and testified that she was called into the hallway on the night of April 13, 1974, at which time appellant asked her to accompany appellant to appellant's apartment. When Garner refused, appellant stated, "I think something has happened", and "Well, I think there's somebody down there dead". Garner heard no gunshot and did not think appellant had been drinking. She testified that the deceased was "sickly" and appellant expressed concern over his condition. She also stated that in the past appellant had requested her to dial the telephone for appellant who was unable to do so because of an infirmity in her arms.

Sue Williams shared a common wall with appellant and deceased's apartment. She heard no shot or disturbance, but called the police at the request of appellant and Garner. Williams testified that appellant did not appear intoxicated. Contrary to Officer Cosby's testimony, she stated that she was with appellant and Garner when the first officer arrived and that the officer took appellant by force back to her apartment. She did not hear appellant say, "I had to do it".

Appellant testified that she took care of and kept house for the deceased who was extremely ill. She denied shooting the deceased. According to her testimony, she fixed supper for the deceased and had a glass of wine with him, following which she took several prescription drugs and went to bed. Her next recollection is of two police officers in her apartment.

Over what we deem sufficient objection to raise the issue of the admissibility of an extraneous offense,[1] the State was permitted to prove that the brother of the deceased and his son visited deceased and appellant in November of 1972 in their apartment at a time when both deceased and appellant had been drinking heavily, that upon said visit the son suddenly informed said brother that appellant was standing by his side and pointing a pistol at his head, that there had been no argument or disagreement prior to said time and that deceased's said brother immediately disarmed appellant and left. Such is properly raised by appellant's First Ground of Error.

Evidence of an extraneous offense committed by an accused has been held admissible as "res gestae" and to prove identity, intent or knowledge, state of mind, motive, system, scheme or plan, and to rebut or refute a defensive theory. *Cameron v. State*, Tex.Cr.App., 530 S.W.2d 841; *Albrecht v. State*, Tex.Cr.App., 486 S.W.2d 97; *Johnson v. State*, Tex.Cr.App., 494 S.W.2d 870; *Halliburton v. State*, Tex.Cr.App., 528 S.W.2d 216. The only argument of significant strength that the State can make toward admissibility of said proof that appellant while intoxicated on an occasion approximately two and one-half years prior to the date of this offense pointed a pistol at the head of deceased's brother is that such was relevant to show the effect of alcohol upon appellant and her tendency toward

1. "Your Honor, we would object to the testimony of this witness. One, the State, I think, is trying to get this in under, you know, a prior type offense showing a course of conduct, which this does not meet the requirements of the law  . . . ."

**44**

belligerency and resort to firearms when under its influence. In other words, that such proof is relevant on the question of motive. Though said proof might be of some slight relevancy on said question, such is certainly not what we deem to be *material relevancy*. All evidence of a defendant's commission of collateral crimes has some slight relevancy toward the likelihood of his committing an alleged crime, and especially so where the collateral crime is similar in nature to the one charged against the accused. However, as stated by this Court in *Albrecht v. State*, supra, *"The test for determining admissibility of any type of evidence is whether the probative value of such evidence outweighs its inflammatory aspects, if any."* We consider proof of the unexplained act of the appellant of pointing a pistol at deceased's brother while intoxicated two and one-half years prior to the offense alleged herein to be so inherently prejudicial to appellant under the many contradicted facts of this circumstantial evidence case that its slight probative value, if any, is far outweighed by its potentiality for improper, unjustified and inflammatory inferences against the accused. The reasons for the need for its exclusion are well stated by Judge Odom in *Albrecht v. State*, supra, at page 100, as follows:

"Limitations on the admissibility of evidence of an accused's prior criminal conduct are imposed, not because such evidence is without legal relevance to the general issue of whether the accused committed the act charged, but because such evidence is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him."

The judgment is reversed and the cause remanded.