Feryl John GRANGER, Appellant,

v.

The STATE of Texas, Appellee.

No. 64862.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 1, 1980.

Logene L. Foster and Ronald R. Pope, Sugar Land, for appellant.

William A. Meitzen, Dist. Atty. and Winston Cochran, Asst. Crim. Dist. Atty., Richmond, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of the capital murder of Steve Anderson. The special issues required under Art. 37.071(b), V.A.C. C.P., were submitted to the jury and were answered in the affirmative. Consequently, the punishment was assessed at death.

The first ground of error challenges the sufficiency of the evidence to sustain the conviction for capital murder. Specifically, appellant contends that the accomplice testimony tending to show the essential element of capital murder in the case, remuneration, was not sufficiently corroborated.

The conviction was for capital murder under V.T.C.A., Penal Code Sec. 19.03(a)(3), which provides in pertinent part:

"A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this Code, and:

"...

"(3) the person commits the murder for remuneration or the promise of remuneration ...."

Mary Lou Anderson, the appellant's accomplice in this action, was the State's primary witness. She had been previously convicted of the capital murder of her father, Steve Anderson.[1]

Anderson testified that she had purchased a five thousand dollar double indemnity insurance policy on the life of her father. She also testified that late in December 1977 she was heavily in debt and had concocted several blackmail schemes to improve her financial condition. She stated

that in late December, Molly Farrer introduced her to the appellant as a "contract" man. Anderson then discussed with appellant an arrangement whereby he would act as the collector in her various blackmail schemes; that is, appellant was to convince the objects of the blackmail, by force or otherwise, to pay the money demanded.

Anderson also maintained that she at no time expressly agreed to hire appellant for the murder of her father. She stated, however, that during the negotiations with appellant, she did reveal she was the beneficiary under a life insurance policy on the life of her father.

Anderson further stated that on January 2, 1978, appellant came to her apartment and informed her that he was going to kill her parents at a cost to her of five thousand dollars. According to Anderson, appellant then stated that Anderson was to assist in the killing or appellant would kill her and her son. Anderson testified that they borrowed a car from Darold Comeaux and acquired a gun. Appellant and Anderson left her son with Farrer and drove from Louisiana through Beaumont to Sugarland, the residence of Steve Anderson. Anderson testified that on January 3, 1978, at approximately 6:00 p. m., the appellant tied her and placed her in the back seat of the auto and went inside the residence of her father where he murdered him and her stepmother.

On January 19, 1978, Anderson acquired a four thousand dollar loan against the insurance of her father's life. She testified that later that evening she accompanied appellant and Farrer to an apartment. Anderson then placed her purse containing the four thousand dollars in the bedroom. Later that evening when she checked the money in her billfold, she discovered that three thousand dollars was missing. She then stated that when she confronted the appellant with this fact, he stated that he took

---

[1]. At the time Anderson testified she had pending before the court which tried the instant action a motion for new trial and was facing another capital murder charge. After the instant action resulted in conviction, Anderson's motion for new trial was granted, she entered a plea of guilty and was sentenced to fifty years. The other capital murder charge was dropped.

the money as payment for the murder of her parents.

The State presented several other witnesses. Darold Comeaux testified that he loaned the appellant his auto and helped him acquire a .25 caliber gun on January 2, 1978. When called by the defense, Comeaux testified that Anderson apparently accompanied the appellant willingly. Through Robert Fetty, manager of the Howard Johnson Motel in Beaumont, the State introduced motel records showing that Anderson had signed for a room on January 2, 1978.

An employee of Gibson's Pharmacy in Beaumont testified that she sold some Curity adhesive tape to the appellant on January 3, 1978. Another Gibson's employee testified that she sold Mary Lou Anderson a box of .25 caliber ammunition on the same day. The owner of a service station outside Winnie, Texas, stated that he sold a tire to appellant on January 3, 1978. An employee of the service station testified that since the appellant's car had a flat tire and was left at a nearby roadside park, he took the appellant and Anderson to their car after they purchased the tire.

Dr. Joseph Jachimczyk, a forensic pathologist, testified that he removed three .25 caliber bullets from the body of Steve Anderson and that Steve Anderson died as a result of the gunshot wounds. He also stated that the mouth and wrists of the victim were bound with adhesive tape.

The essence of the capital murder offense as alleged against this appellant is that he committed the murder, in the words of the indictment, "for remuneration and the promise of remuneration." The State contends that the record contains sufficient evidence to sustain a conviction for capital murder since the evidence established an expectation of remuneration on the part of the appellant, citing, *McManus v. State,* Tex.Cr.App., 591 S.W.2d 505. The State further contends that although it need not corroborate the element of remuneration in this case, there is nevertheless sufficient corroboration to sustain a conviction for capital murder.

Art. 38.14, V.A.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

■ *McManus,* supra, stands for the proposition that where, in a murder for hire case there is no evidence of an express promise to pay for the killing of another person, if the record reflects *through accomplice and non–accomplice testimony* that a defendant expected to be compensated for the act of murder, there may be a competent showing of the element of remuneration for the purpose of Section 19.-03(a)(3). *McManus* does not eliminate the requirement of corroboration of an accomplice's testimony regarding the element of remuneration in a case of murder for hire. *Fortenberry v. State,* Tex.Cr.App., 579 S.W.2d 482, 486, specifically held that an accomplice witness must be corroborated as to the element which elevates murder to capital murder.

In the case at bar the only evidence of an expectation of remuneration lies in the testimony of the accomplice, Mary Lou Anderson. She testified that although she never expressly promised or agreed to hire appellant for the killing, the appellant informed her that he would kill her parents for five thousand dollars; and after the killing, appellant actually took three thousand dollars as payment for the crime. Molly Farrer, who according to Anderson introduced her to appellant as a "contract man" and was present when appellant took the three thousand dollars, did not testify.

The State contends that the evidence showing an expectation of remuneration is corroborated by non–accomplice testimony which showed the following:

1) Anderson willingly accompanied appellant in obtaining the vehicle and the weapon used in the crime.

2) Anderson purchased the ammunition used in the murder.

3) Anderson signed for a motel room for herself and appellant before the killing.

■ To test the sufficiency of the corroboration in a capital murder case we are constrained to eliminate from consideration the evidence of the accomplice witness and then examine the evidence of other witnesses with the view to ascertain if there be any inculpatory evidence, that is, evidence of incriminating character which tends to connect the defendant with the commission of the offense as to that element which elevates the murder to capital murder. See, *Fortenberry v. State*, supra. If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Carrillo v. State*, 566 S.W.2d 902, 907.

■ The non–accomplice testimony in the instant case falls drastically short of that held sufficient to corroborate the element of remuneration in *McManus v. State*, supra. In *McManus*, the non–accomplice testimony established that the defendant had indicated to two witnesses that he expected to "come into" some money in August (the month after the capital murder) and that the defendant had approached another non–accomplice witness inquiring about finding a "hit man." The defendant told the latter witness that he wanted two persons killed.

The corroborative facts which the State adduced simply do not tend to prove that the existence of the element of remuneration, the element which elevates the offense to capital murder, is more likely than not.

■ The judgment is ordered reformed to show a judgment of acquittal as to capital murder. See *Ex parte Reynolds*, Tex. Cr.App., 588 S.W.2d 900. Appellant may, however, be retried for the lesser included offense of murder. See, *Ex parte Harris*, Tex.Cr.App., 600 S.W.2d 791.

DOUGLAS, Judge, dissenting.

The testimony of the accomplice witness plus the circumstances in the case are sufficient to show that appellant was hired to do the killing.