**Sammy Conrad GARZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–00085 CR.**

Court of Appeals of Texas,
Dallas.

April 5, 1982.

Rehearing Denied May 17, 1982.

Mark F. Holland, J. Stephen Cooper, Dallas, for appellant.

Kathi Drew, Asst. Dist. Atty., Dallas, for appellee.

Before AKIN, VANCE and FISH, JJ.

FISH, Justice.

Sammy Conrad Garza was convicted by a jury of aggravated kidnapping and sentenced to seventeen years imprisonment. For the reasons to be stated, we sustain five of his nine grounds of error and reverse and remand for a new trial.

In the late afternoon of June 9, 1978, the complaining witness C_____, a twelve-year old female, was playing with an eight-year old girl friend in the trailer park where C_____ lived. Appellant drove up to the pair in a pickup truck with a camper on the back and asked for directions to the home of the Waltons. C_____ gave him directions and he drove away. A short time later, appellant drove up again and tried to persuade C_____ to enter his vehicle. He offered her $20, which she refused. He then got out of the truck, grabbed her, and forced her into the truck. As they drove away, appellant released C_____ from his grip but warned her not to get out or he would "jump" her. During the drive, appellant grabbed her by the shorts she was wearing and pulled her over next to him. While they were stopped at an intersection, appellant's attention was apparently distracted, allowing C_____ to jump out of the truck and escape. Another driver in the area saw C_____ run in front of her vehicle and offered the little girl assistance. C_____ got into her rescuer's car and related what had happened.

Appellant was arrested soon afterward and indicted for the offense of aggravated kidnapping. The indictment alleged that appellant "did knowingly restrain C_____,

by secreting her and holding her in a place not likely to be found, to wit: an automobile, with the intent to prevent her liberation, and with the intent to terrorize, sexually violate, and sexually abuse the said C_____." To prove this allegation of appellant's intent "to terrorize, sexually violate, and sexually abuse" C_____, the State offered evidence that appellant had committed sodomy 3½ months earlier with a twelve-year old boy. The State conceded that this was its only evidence of the intent that would transform the offense of kidnapping into aggravated kidnapping.[1]

The evidence of this extraneous offense showed that on February 23, 1978, between 5:30 and 6:00 p. m., appellant pulled up beside R_____ [a 12-year old boy at the time of the occurrence] as he was walking home from a friend's house. The pickup truck with camper attached driven by appellant on this occasion was different from the one he drove during the primary offense on June 9. Appellant asked R_____ where he was going and whether he wanted a ride. R_____ initially declined but then accepted appellant's offer of a ride and climbed into the vehicle. Appellant drove for five or ten minutes in a different direction from R_____'s destination. After arriving in a wooded area, appellant pulled over to the side of the road and stopped. He told R_____ to "unsnap your pants" and to "get up on the seat on your knees." When R_____ complied, appellant placed his mouth on R_____'s penis for a minute or two. Appellant then acceded to R's request to transport him back to town. Appellant offered R_____ money to "do it next week" and then let him out near his home.

Appellant timely objected to this testimony at trial and renews his objection on this appeal. Virtually all of appellant's complaints relate in some way to the admission of this offense, for if he is correct in claiming that this evidence was improperly admitted, then he is also correct that the evidence remaining in the record is insufficient to support a finding of the intent required for aggravated kidnapping.

■ We examine first the contention that evidence of the sodomy offense was improperly admitted. Ordinarily, of course, evidence of such an extraneous or collateral offense is inadmissible. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1972). The reasons for the rule are well established: (1) an accused is entitled to be tried on the accusation made in the State's charging instrument which specifies the material issues of the case and cannot—consistent with the rudiments of due process—be tried for some collateral crime of which he has no notice; (2) an accused's propensity to commit crimes is not an issue which is material to whether he is guilty of the specified conduct charged by the State; and (3) the introduction of evidence establishing merely a propensity constitutes a trial of the accused as a criminal generally, which offends our system of justice. *Murphy v. State*, 587 S.W.2d 718, 721 (Tex.Cr.App.1979). Such evidence tends only to confuse the issues in the case, *Albrecht v. State, supra*, at 100, is inherently prejudicial, *Murphy v. State, supra*, at 721, and may result in the jury convicting appellant, not for the offense charged, but for the extraneous offense. *See McCann v. State*, 606 S.W.2d 897, 901 (Tex.Cr.App.1980).

■ Nevertheless, an extraneous transaction constituting an offense may become admissible upon a showing by the prosecution both that the transaction is relevant to a contested material issue in the case and that the relevancy value of the evidence

---

1. *So far as relevant here the Penal Code defines* "kidnapping" and "aggravated kidnapping" as follows:

Sec. 20.03. Kidnapping
   (a) A person commits an offense if he intentionally or knowingly abducts another person.

   .     .     .     .     .

Sec. 20.04. Aggravated Kidnapping

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

   .          .          .

   (4) inflict bodily injury on him or violate or abuse him sexually; or
   (5) terrorize him or a third person;

   .          .          .          .

(Vernon 1974).

outweighs its inflammatory or prejudicial potential. *Murphy v. State, supra,* at 722. Evidence of extraneous offenses have been held admissible, as exceptions to the general rule, to (1) show the context in which the criminal act occurred (the *res gestae*); (2) prove identity circumstantially; (3) prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself; (4) prove malice or state of mind, when malice is an essential element of the State's case and cannot be inferred from the criminal act; (5) show motive; or (6) refute a defensive theory raised by the accused. *See Albrecht v. State, supra,* at 100–101.

In the present case, the State maintains that the sodomy offense was relevant to the third *Albrecht* exception, i.e., to prove appellant's intent to sexually abuse or violate his victim. Having ascertained relevance to a material contested issue, we must still determine whether the tendency of the evidence to show such an intent outweighs its inherent potential for prejudice to appellant. The Court of Criminal Appeals has indicated that this weighing of probative value against potential for prejudice must be done on the facts of each case. *See, e.g., Albrecht, supra,* at 100 ("each case must be determined on its own merits"); *Ruiz v. State,* 579 S.W.2d 206, 209 (Tex.Cr.App. 1979) ("whether the introduction of an extraneous offense into evidence is reversible error is an ad hoc determination based on the merits of each case"); *Gipson v. State,* 619 S.W.2d 169, 170 (Tex.Cr.App.1981) ("since the circumstances necessarily vary within the factual contexts, each case must be determined on its facts").

The rationale for admitting evidence of similar occurrences to prove intent has been ably formulated by a leading treatise writer to be "the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all." 2 Wigmore, Evidence, Sec. 302 (Chadbourn rev. 1979). To illustrate, he cites the example of two hunters, A and B. A hears the bullet from B's gun whistling past his head. The first time, A is willing to accept B's explanation of bad aim or accidental tripping; but if soon after the same thing happens again, and if on a third occasion B's bullet hits A, the immediate inference (as a probability, not a certainty) is that B shot A deliberately. The logical basis for this inference is that the chances of an inadvertent shooting on three successive similar occasions are extremely small. Each successive occurrence tends increasingly to negative an innocent explanation.

Similarly, where the intent of an erroneous addition of a bill rendered in a bookkeeper's accounts is in issue, the erroneous addition of a bill rendered to a former employer ten years before would have no significance, because such accidents will ordinarily happen at intervals; but several other erroneous additions in the bookkeeper's own favor in the same year and in the same book of accounts tend to exclude casual error, and leave deliberate intent, as the probable explanation. 2 Wigmore, *supra,* at sec. 302; *see McCarron v. State,* 605 S.W.2d 589, 593–94 (Tex.Cr.App.1980).

What gives these repeated occurrences probative value, according to Dean Wigmore, is their similarity. Just how similar one occurrence must be to the next before it may properly be used to support an inference of criminal intent has often proven difficult for courts to determine. Despite this difficulty, the importance of demanding strong similarity, though not perfect identity, between offenses was illustrated in the panel opinion in *United States v. Beechum,* 555 F.2d 487, 495–496 (5th Cir. 1977):

"Suppose that a defendant, having shoved a customs officer, is on trial for wilfully interfering with the officer's performance of his duties. The government asserts that defendant's assault on the officer was unprovoked. The defendant claims that he did not mean to shove the officer. The government introduces as a prior similar offense the defendant's aggravated assault upon a bartender in order to show that defendant intended to assault the customs officer. Although the defendant's assault upon a bartender

did not result in a conviction, let us say that the government convincingly proved that it took place.

"It might be suggested that the evidence ought to be admitted because the prior offense illustrates that our defendant did not likely stumble accidentally against the customs officer. For any man sufficiently bellicose to assault a bartender, a customs officer is probably fair game. The flaw in this argument is, of course, that other crimes evidence may *not* be used to prove character or disposition, but only to prove (e.g.) intent; here the two situations are insufficiently similar to allow us to infer intent to strike the officer from the defendant's prior assault on a bartender. We properly adhered to a strict standard of similarity in the case from which this hypothetical was taken, *United States v. Sanchez*, 482 F.2d 5 (5th Cir. 1973). In ruling that the prior offense was inadmissible we said: 'We are not persuaded that the charge against appellant of assault on a bartender is evidence of an intent to forcibly assault ... a federal officer ....' *Id.* at 8.

"On the other hand, suppose that the defendant had 'shoved' customs officers twice before at other border checkpoints. Although the conclusion that he intended to assault the customs officer on the occasion charged is by no means certain, we might view the prior and charged offenses as sufficiently similar to allow the jury to make the inference if it chooses to do so. Our reasoning is simple. The defendant might unintentionally have shoved one customs officer, but the likelihood that he would shove two or three accidentally is sharply reduced. We might, to be sure, have an unusually clumsy fellow, but the odds are we do not. Hence we think the inference from past act to present intent sufficiently strong to compensate for the potential prejudice" [Footnotes omitted].

The panel opinion in *Beechum*, from which the above excerpt was taken, was vacated by the full court on rehearing because it had construed too narrowly the provisions of Federal Rule of Evidence 404(b), which allows evidence of extraneous offenses to prove intent. 582 F.2d 898 (5th Cir. 1978) (on rehearing *en banc*). The majority opinion for the *en banc* court analyzed the relevance of an extraneous offense to prove intent as follows:

"Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

.    .    .    .    .

"Once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense ..., [t]he extrinsic offense is relevant ... because it lessens the likelihood that the defendant committed the charged offense with innocent intent.

.    .    .    .    .

"In measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic and charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence. Of course, equivalence of the elements of the charged and extrinsic offenses is not required. But the probative value of the extrinsic offense correlates positively with its likeness to the offense charged." [2]

582 F.2d at 911, 913, 915.

So far as we can determine from our research, the Court of Criminal Appeals has not discussed in detail the degree of similarity it would require between an extraneous and charged offense before the extraneous

---

**2.** The *Beechum* court uses the term "extrinsic offense" instead of "extraneous offense."

offense would be admissible on the issue of intent. Like the Fifth Circuit, it has stated the general rule that admissibility of an extraneous offense for any purpose is to be tested by weighing its probative value against its potential for prejudicing the accused. *See Ruiz v. State, supra,* at 209. To have probative value, the extraneous offense, like any other evidence, must provide some logical basis for the trier of fact to find the fact that it is offered to prove, *see Pittman v. Baladez,* 158 Tex. 372, 312 S.W.2d 210, 216 (1958) and *Gray v. State,* 116 Tex.Cr.R. 617, 33 S.W.2d 457, 459 (1930): in this case, that the accused acted with the same intent when he committed the two offenses. *See Beechum (en banc), supra,* at 911, 913.

The Court of Criminal Appeals has required such a rational connection with respect to other contested issues recognized by *Albrecht. See, e.g., Yarbrough v. State,* 617 S.W.2d 221, 225 (Tex.Cr.App.1981) ("evidence of these extraneous offenses was relevant as a circumstance *tending to prove* the commission of the offense of aggravated perjury"); *Sanders v. State,* 604 S.W.2d 108, 111 (Tex.Cr.App.1980) (where State offered extraneous offense to rebut defense of insanity, threshold inquiry was whether evidence of such offense *tended to prove* accused was sane at time charged offense was committed); *Berry v. State,* 588 S.W.2d 932, 934 (Tex.Cr.App.1979) (where identity is in issue, extraneous offense is relevant only when there is sufficient similarity between it and the charged offense *to support an inference* that accused committed both); *Holley v. State,* 582 S.W.2d 115, 118 (Tex. Cr.App.1979) ("the fact that a defendant commits or has committed numerous similar criminal acts does not *tend to prove* that he was sane" and thereby refute his defense of insanity); *Ruiz v. State, supra,* at 210 ("the dissimilarity in the modus operandi between the killing of Gilbert Moreno and Joseph Picinich detracts from *its probative value"* in determining whether defendant should have anticipated one of his cohorts would shoot and kill murder victim during aggravated robbery); *Hines v. State,* 571 S.W.2d 322, 325 (Tex.Cr.App.1978) ("the fact that appellant used heroin three months after he

is alleged to have delivered it to Payne adds little, if anything, in the way of *probative evidence to rebut* his defensive theory of alibi"); *Walls v. State,* 548 S.W.2d 38, 41 (Tex.Cr.App.1977) (*"no sufficient relationship* between the robbery of Sharp and the proof necessary *to establish* that appellant robbed Miss Budro"); *Mallicote v. State,* 548 S.W.2d 42, 43–44 (Tex.Cr.App.1977) (in murder prosecution, *any inference* to be drawn from act of appellant, while intoxicated, in pointing pistol at head of deceased's brother some 2½ years earlier so slight as not to overcome prejudice to appellant); *Cameron v. State,* 530 S.W.2d 841, 844 (Tex.Cr.App.1975) ("would the evidence that also proved the robbery at Ready-Mart Food Store *aid in determining* whether the appellant is the person who committed the offense at SIC?"); *Ford v. State,* 484 S.W.2d 727, 731 (Tex.Cr.App.1972) ("in the case of identity, similarity is required *as a basis for the inference* to be drawn from the evidence of the former crime") [emphasis supplied in all cases].

Of course, the similarity required depends on the particular contested issue to which the extraneous offense is relevant. The Court of Criminal Appeals explained in *Ford v. State, supra,* at 730–31, the reason why the degree of similarity will vary:

"It should also be noted that under the other exceptions [besides identity] to the rule against admission of extraneous offense, it is not always necessary to show similarity. For example, evidence to rebut alibi is admissible if it places the accused at a place where he claimed not to be, or if the evidence shows the impossibility of his alibi, notwithstanding the fact that it shows the commission of an offense, and that the offense is dissimilar. For example, had the supermarket robbery occurred on the same day, two hours after the present robbery-murder, evidence of the former would have been admissible to refute appellant's alibi defense, notwithstanding the lack of a distinguishing characteristic. This is so because in the case of alibi, the evidence is offered to show that the accused was not where he claimed to be, and similarity is

not an element of admissibility. In the case of identity, similarity is required as a basis for the inference to be drawn from the evidence of the former crime."

Without discussion the Court tacitly reaffirmed the foregoing rule that the degree of similarity required will vary with the contested issue in *McDonald v. State*, 513 S.W.2d 44, 49–52 (Tex.Cr.App.1974). In *McDonald*, a sodomy prosecution, the State offered no evidence of extraneous offenses during its case in chief. Appellant then offered testimony from a young boy that appellant had never done anything "bad" to him and that he never saw the appellant do anything to any other boy. Appellant also offered evidence of alibi. In rebuttal, the State offered evidence of other sodomy offenses to refute these defensive theories. The court held that evidence of the other offenses was properly admitted and noted that there were similarities between the primary and extraneous offenses, even though such similarities were unnecessary to its holding that the extraneous offenses were admissible. 513 S.W.2d at 51. *See also Beechum v. State*, (*en banc*), *supra*, at 911–12, n.15.

Turning to the case at bar, the State argues that evidence of the appellant's act of sodomy with a twelve-year old boy was probative of appellant's intent to sexually violate or abuse the twelve-year old girl he abducted because of numerous factual similarities between the two offenses. The State points out that the following distinguishing characteristics are shared by the two offenses: each victim was approximately twelve years old; each victim was playing in or walking adjacent to the street when appellant drove up; in both instances appellant drove a pickup truck with a small camper on the back; each child was lured or forced into a vehicle; appellant drove in a different direction from that promised to the victim; and the appellant offered each victim money.

On the other hand, appellant argues that there are numerous differences between the two offenses: the victim of the extraneous offense was a boy, while the victim here was a girl; the boy in the extraneous offense was alone when appellant approached him, whereas the girl in the primary offense was playing with a friend when first approached by appellant; appellant approached the boy by offering him a ride, but he approached the girl and her friend by asking for directions; the pickup trucks driven during each offense were different; the boy voluntarily climbed into appellant's truck, while the girl was forced to enter it; in the extraneous offense, appellant never left the truck while offering the boy a ride, but in the present case appellant had to get out of the truck to force the girl into it; the boy was released upon his first request, while the girl in the present case was not, despite her repeated entreaties; as the boy was leaving the pickup *after* consummation of the sexual act, he was offered money to "do it next week," but the girl was offered money *before* she was forced into the vehicle and the offense was committed; and the extraneous offense was oral sodomy, while the primary offense was aggravated kidnapping.

Taking into account the dissimilarities between these two offenses, which are at least as numerous as the similarities, we conclude that any inference of intent "to sexually violate, sexually abuse, or terrorize" the kidnapping victim which might be drawn from the sodomy offense is so slight, when compared to its inherent potential for prejudicing appellant, that evidence of the extraneous offense should not have been admitted. *See Mallicote v. State, supra,* at 43–44.

In the offense of aggravated kidnapping, "the proscribed conduct is abduction with intent to commit some physical act of bodily injury, or a non-consensual sex act, upon the victim." *Phillips v. State*, 597 S.W.2d 929, 936–37 (Tex.Cr.App.1980). *See also* sec. 21.04, Tex.Penal Code, (definition of "sexual abuse"). None of the evidence adduced concerning the sodomy offense showed any effort by appellant to commit bodily injury or a *non-consensual* sex act upon the twelve-year old boy. We fail to see, therefore, how this evidence could support any inference that appellant intended to commit bodily injury or a nonconsensual sex act upon the twelve-year old kidnap-

ping victim.[3] Absent an inference that appellant acted with the same intent during the two offenses, the probative value of the extraneous offense to prove intent is virtually nil.

The dissent argues that the sodomy offense was admissible "to show the existence of an unnatural sexual attitude toward children of the age of the victim." From this premise, the dissent apparently reasons that the jury could infer a greater disposition on the part of appellant to commit a sexual offense with any child he abducted. We believe that admissibility on this ground would be tantamount to trying the accused for being prone to commit sexual offenses,[4] despite the Court of Criminal Appeals' denunciations of the use of extraneous offenses to prove that the accused has a propensity to commit crimes. *See Sanders v. State, supra,* at 111 ("because an accused's 'propensity to commit crimes' is not an issue which is material to whether he is guilty of the specified conduct charged by the State [,] it follows therefore, that introduction of evidence establishing such a propensity constitutes a trial of the accused 'as a criminal generally' which is prohibited"); *Walls v. State, supra,* at 41 ("it has been the consistent holding of this Court that the accused should be tried on the indicted offense and not for being a criminal generally").

We are not persuaded that a different rule has been recognized for sexual offenses. Courts in other jurisdictions have apparently done so, *see* 1 Wharton's Criminal Evidence § 250 (13th Ed. 1972), and the State urged at trial the existence of such a rule in Texas. Language in some cases from the Court of Criminal Appeals superficially supports this view. On closer reading, however, in every decision we have found where language occurs that might suggest a special rule for sex offenses, the actual holding is explicable under traditional *Albrecht* criteria. For example, in *McDonald v. State, supra,* a sodomy prosecution, the court held that the State could properly offer, in rebuttal, testimony that appellant had committed sodomy offenses with boys besides the complaining witness. The court stated that "the extraneous offenses were admissible to rebut the defense of alibi, to show identity, to show appellant's guilty knowledge, and, in view of the defensive evidence, to show 'the probability of the act charged and the unnatural attention' of appellant toward the prosecuting witness." 513 S.W.2d at 51. Clearly the court need not have gone farther than to hold the evidence admissible to rebut a defensive theory, the sixth exception recognized in *Albrecht.*

Similarly, in *Johnston v. State,* 418 S.W.2d 522 (Tex.Cr.App.1967), another sod-

**3.** The extraneous offense of sodomy with the 12-year old boy might be punishable under several different sections of the Texas Penal Code: "sexual abuse of a child" under § 21.10 (which requires "intent to arouse or gratify the sexual desire of any person"); "homosexual conduct" defined by § 21.06; "public lewdness" defined by § 21.07; or "indecency with a child defined by § 21.11 (none of which offenses requires any more specific culpable intent than that generally required by § 6.02).

The record indicates that appellant was previously indicted for sexual abuse of a child as a result of the incident with the 12-year old boy. He was tried before the same judge who presided over this trial, but a mistrial was declared when the jury was unable to agree upon a verdict. Consequently, we cannot know whether that jury agreed or disagreed that appellant acted with "intent to arouse or gratify the sexual desire of any person" in the incident with R_____. In any event, even if we assume that the jury agreed on appellant's intent but

disagreed about some other element of the offense, that intent is different from the intent "to sexually violate or sexually abuse" in issue here.

**4.** *See Mallicote v. State,* 548 S.W.2d 42, 44 (Tex.Cr.App.1977): "All evidence of a defendant's commission of collateral crimes has some slight relevancy toward the likelihood of his committing an alleged crime, and especially so where the collateral crime is similar in nature to the one charged against the accused." *Cf. Collazo v. State,* 623 S.W.2d 647, 649 (Tex.Cr. App.1981): "Almost any two sexual assaults could be characterized as sadistic acts, just as almost any two murders could be characterized as violent acts. This is nothing more than dressing in psychological garb *the very thing that the law on evidence of extraneous offenses forbids*: proof of the repeated commission of a class of offenses to demonstrate that the defendant is a criminal (or sexual deviate) generally" [emphasis added].

omy case, the court held admissible in rebuttal evidence that appellant had offered deviate sexual intercourse to a young man other than complainant whom appellant had previously counseled in high school. The court held this evidence admissible to rebut appellant's defensive theories. 418 S.W.2d at 528.

Likewise, in *Ball v. State*, 163 Tex.Cr.R. 214, 289 S.W.2d 926 (1956), a prosecution for fondling a child, the court held that after appellant offered a written statement denying the fondling and averring that any contact between his hand and the complainants' thighs was accidental, the State was entitled to offer the rest of the statement in which appellant admitted fondling one of the complaining witnesses on another occasion. Once more, the court's holding is explicable under the sixth *Albrecht* exception, not by creation of a special rule allowing evidence of a disposition to commit sex offenses. Indeed such a reading appears necessary to reconcile *Ball* with *Bielecki v. State*, 140 Tex.Cr.R. 355, 145 S.W.2d 189, 190 (1940).

Finally, in *Rubio v. State*, 607 S.W.2d 498, 499–502 (Tex.Cr.App.1980) (*en banc*), the court held that evidence of extraneous rape offenses is admissible in a prosecution for rape if the accused places his intent in issue by raising the defense of consent. Rather than justifying this holding by a special rule for sex offenses, the court resorted to the *Albrecht* rationale of rebutting a defensive theory.[5]

To create an exception for sexual offenses, while strictly adhering to the general prohibition in other offenses, is to indulge the view that "[m]urderers and thieves may be evil persons, but in common parlance they are not degenerate or perverted, and their crimes are not unnatural and detestable. In the eyes of the layman, the normal person may kill or steal, but only the queer and the abnormal will stoop to the libidinous crimes of incest, sodomy and rape." M. C. Slough and J. William Knightly, Other Vices, Other Crimes, 41 Iowa L.R., 325, 333 (1956). Without some empirical data, we are unwilling to assume that lust is more likely to motivate sex offenders than avarice is to motivate thieves. *Cf. Garcia v. State*, 165 Tex.Cr.R. 134, 305 S.W.2d 605, 606 (1957) (evidence that appellant had engaged in shoplifting for 10 years improperly admitted in prosecution for theft). Consequently, we hold that evidence of the sodomy offense was improperly admitted and sustain appellant's second ground of error.

We also hold that when evidence of the extraneous offense is disregarded, there is insufficient evidence remaining to establish appellant's intent, at the time of the kidnapping, to terrorize, sexually abuse, or sexually violate the little girl abducted. Consistent with the record, the State has conceded as much, both at trial and on appeal, regarding intent to sexually abuse and sexually violate. On appeal, however, the State contends that the required intent to terrorize was established by proof that the kidnapping victim was frightened.[6]

---

**5.** *Rubio* may also stand for the proposition that the State may not offer evidence of extraneous offenses on the issue of intent unless the defendant offers some evidence to place his intent in issue. *See* 607 S.W.2d at 501:

"We hold that when a defendant in a prosecution for rape raises the defensive theory of consent, he places his intent in issue. The State may then offer extraneous offenses which are relevant to that contested issue."

The import of the court's statement seems to be that defendant's intent is not placed in issue unless he offers evidence raising a defensive theory. *See also Ortega v. State*, 626 S.W.2d 746, 748 (Tex.Cr.App.1981) (in burglary of habitation case, where appellant did not testify or offer any defensive theory through other witnesses, he did not put in issue the intent with which he entered the habitation so as to make

extraneous offenses relevant; thus, evidence of extraneous offenses could not be offered, as here, during the State's case in chief). *Cf. Stanley v. State*, 606 S.W.2d 918, 921 (Tex.Cr.App.1980) (issues of identity and intent not raised, so as to permit evidence of extraneous offenses, where defendant in aggravated robbery prosecution rested without presenting evidence) and *Gipson v. State*, 619 S.W.2d 169, 170 (Tex.Cr.App.1981) (to prevent unfair surprise to accused, State perhaps should be required to give notice if it intends to offer evidence of extraneous offenses in its case in chief) *with* Section 31.03(c)(1) of the Penal Code (Vernon 1974) (issues of knowledge and intent in theft prosecution raised by plea of not guilty).

**6.** Before trial, the attorney for the State expressed serious reservations about the position

We do not agree. The indicia of fear relied on by the State is not unique to this particular crime; rather, except in the rarest of situations, it is a natural incident of being victimized by the criminal act. Were we to hold that sufficient aggravation of the offense of kidnapping has been established solely because the victim of the criminal act is scared or frightened during commission of the offense, virtually every act of kidnapping would be transformed automatically into aggravated kidnapping. Where the legislature has created two separate and distinct offenses, we cannot, consistent with the obvious intent of the statute, eliminate any distinction between the offenses so as to create in essence only one offense.[7]

Moreover, we reject as untenable the State's position that the victim's fear is sufficient to establish the appellant's intent to terrorize. Section 6.03(a) of the Penal Code states that "a person acts intentionally, or *with intent*, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result" (Vernon 1974). While a victim's testimony may show that she was in fact terrorized, her mental state is not, without more, evidence of appellant's intent.[8]

---

now urged by the State, viz., that proof of the victim's fright is sufficient to transform kidnapping into aggravated kidnapping:

> MR. SPARKS: [I]f the Court is of a mind that the State would have to have sufficient evidence to establish that the defendant intended to terrorize the victim, then I have a problem with that and here is why: I think that it could be said that in any abduction, the intent is there to terrorize since any abduction involves a certain amount of restraint and constraint to the victim.
>
> . . . . .
>
> Okay. I think that the intent to terrorize, if that is what it is, Judge, and I don't believe that—I am not sure the evidence would be supportive of it because of the definition of terroristic threats, talking about threats of violence, there is no overt threats of violence to the victim in this case.
> The defendant simply—according to the facts that the State will bring, simply gets her in the car and holds her for a period of time and she finally gets away from him.
> THE COURT: Was there not evidence that the complaining witness fought and struggled?
> MR. SPARKS: Well, there was evidence that the—she was resisting and tried to get away by pulling away from the defendant.
> THE COURT: Was there not evidence further that after she got out, she was frightened?
> MR. SPARKS: There was evidence she was frightened, yes, but I think whenever you have a restraint and abduction, you are going to have fright.
> THE COURT: That is why the Presumption of Intent Rule probably exists in burglary cases.
> MR. SPARKS: Judge, if that is true, there is no such thing as an aggravated kidnapping, because whenever you would have a kidnapping, you would have terrorization.

Despite the prosecutor's misgivings, the trial court apparently ruled that the victim's fright was sufficient to establish the aggravating element of terrorization.

> THE COURT: I will tell you very frankly right now, and I say this to Mr. Holland, too, if the testimony in this case—in the State's case in chief is substantially the same as the witnesses testified when this case was used as an extraneous offense, I fully intend to send the case to the jury.
> MR. SPARKS: *On the issue of terrorize?*
> THE COURT: *Yes.* [emphasis added]

7. The Court of Criminal Appeals has construed kidnapping as a lesser included offense of aggravated kidnapping. *Ex parte Gutierrez*, 600 S.W.2d 933, 935 (Tex.Cr.App.1980) (*en banc*). *See* Art. 37.09, Tex.Code Crim.Pro.Ann. (Vernon 1981).

8. Counsel for the State at trial observed that "the definition, as far as I can see, for terrorizing someone is not in the statute" [defining aggravated kidnapping]. By analogy, he referred the court to Article 22.07 of the Penal Code." "The closest thing I can find is terroristic threats, and in that statute, there is spoken the type of offense that involves the threat of violence."

In Article 22.07 of the Penal Code, which was enacted at the same time as Article 20.04 (aggravated kidnapping), the legislature defined threat as "terroristic" if made "with intent to...place any person in fear of imminent serious bodily injury" (Vernon 1974).

The State's attorney correctly predicted that his evidence would not prove a definition of "terrorize" borrowed from article 22.07: "I think the evidence will probably not establish that there was in fact any oral threat of violence in this case."

Appellant's third, fourth and fifth grounds of error are sustained.

Since we have held the evidence insufficient to support appellant's conviction for aggravated kidnapping, we must consider his contention that he may not be retried for this offense. Because we find the evidence sufficient to support a conviction for the lesser offense of kidnapping, we reverse and remand for a new trial on that offense under the authority of *Granger v. State*, 605 S.W.2d 602, 605 (Tex.Cr.App.1980) (*en banc*) and *Ex parte Harris*, 600 S.W.2d 791, 792–793 (Tex.Cr.App.1980) (*en banc*) (on respondent's motion for rehearing).

Reversed and remanded.

VANCE, Justice dissenting.

I respectfully dissent. It is well established that an accused may not be tried for some collateral crime or for being a criminal generally. *Bass v. State*, 622 S.W.2d 101 (Tex.Cr.App.1981); *Hines v. State*, 571 S.W.2d 322 (Tex.Cr.App.1981). One exception to this rule, acknowledged by the majority, is that an extraneous offense is admissible to prove scienter, where intent is an essential element of the State's case and cannot be inferred from the act itself. *McCarron v. State*, 605 S.W.2d 589, 593–594 (Tex.Cr.App.1980); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1975). Under this exception it necessarily follows that the State in its case-in-chief is entitled to introduce a *similar* extraneous offense as evidence of the appellant's intent to commit sexual abuse with the child. *See Mulchahey v. State*, 574 S.W.2d 112, 113, 117 (Tex. Cr.App.1978). It is the element of similarity, or the lack there of, which the majority holds the admission of appellant's extraneous offense to be in error.

The presence or absence of similarity is not entirely determinative of the admissibility of the extraneous offense. *Halliburton*

*v. State*, 528 S.W.2d 216, 219 (Tex.Cr.App. 1975) (on Appellant's Motion for Rehearing). I find the characteristics between the extraneous offense and the charged offense as set out in the majority opinion sufficiently similar to permit its admission to prove the appellant's intent.

In any situation where there are no acts by the accused in which his intent may be inferred, the admission of an extraneous offense will be prejudicial, yet the exception does exist. *Rubio v. State*, 607 S.W.2d 498, 506 (Tex.Cr.App.1980) (concurring opinion by J. Clinton). I fail to see how the admission of the appellant's prior extraneous offense is any more prejudicial than to an accused forger being presented with the admission of prior passing of checks. *Weir v. State*, 503 S.W.2d 571 (Tex.Cr.App.1973); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr. App.1975); *Harris v. State*, 169 Tex.Cr.R. 143, 333 S.W.2d 142 (1960). Neither do I find it more prejudicial than a prior non-payment offense admitted against a person charged with theft of services. *Reger v. State*, 598 S.W.2d 868, 871 (Tex.Cr.App. 1980).

The appellant's prior offense tends to show the existence of an unnatural sexual attitude toward children of the age of the victim. Compare *McKinney v. State*, 505 S.W.2d 536, 541–542 (Tex.Cr.App.1974) and *Dillard v. State*, 477 S.W.2d 547 (Tex.Cr. App.1972) with *Ballard v. State*, 464 S.W.2d 861 (Tex.Cr.App.1971) and *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953). The extraneous offense is evidence of the state of mind (intent) of the accused at the time he committed the offense for which he is charged. *Lolmaugh v. State*, 514 S.W.2d 758 (Tex.Cr.App.1974); *McKinney v. State*, supra at 541–542. The extraneous offense was properly admitted before the jury for the limited purpose of showing intent.[1]

---

1. The court in the following correctly limited the jury's consideration of the extraneous offense to the matter of determining intent:

    You are instructed that certain testimony was admitted before you in this case regarding the defendants having committed an offense other than the offense alleged against him in the indictment for which he is on trial. You cannot

consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant, and no other person, committed such other offense, if one was committed, and even then you may only consider the same in determining the intent, if any, of the defendant in connection with the offense, if any, alleged against him in the indictment.

In response to appellant's challenge to the sufficiency of the evidence, I find the evidence sufficient to prove kidnapping, *Sanders v. State*, 605 S.W.2d 612, 614–615 (Tex.Cr.App.1980), and the admission of the extraneous offense sufficient to support the jury's verdict of aggravated kidnapping. I have reviewed appellant's additional grounds and find no error. The judgment should be affirmed.